Michel **CHEVALIER** and Jean Chevalier, his wife, Individually and on behalf of all members of a class of mortgagors similarly situated, et al.

v.

**BAIRD SAVINGS ASSOCIATION et al.**

Civ. A. No. 72–1599.

United States District Court, E. D. Pennsylvania.

Sept. 16, 1976.

See also D.C., 66 F.R.D. 105.

David J. Ackerman, Harold K. Cohen, Samuel Diamond, Diamond, Polsky & Bauer, Herbert B. Newberg, Philadelphia, Pa., for plaintiffs.

Walter R. Milbourne, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

This action challenges the practice of a number of savings institutions of charging their mortgagors interest from the date of settlement to the date of the first monthly payment. Plaintiffs allege in their third amended complaint that this practice violates the Truth in Lending Act (hereafter

"TILA"), 15 U.S.C. § 1601 *et seq.* because the disclosure statement provided was inaccurate with respect to this charge. Plaintiffs also claim that the defendants conspired to make this unlawful charge in violation of the Sherman Act, 15 U.S.C.A. § 1.

Plaintiffs seek to have this case certified as a class action. With respect to the antitrust count, they wish to represent a class of all borrowers from defendants[1] who "obtained mortgage loans on or after January 1, 1968, which were secured by conventional mortgages on one-family homes where [the alleged illegal] charge was made." The TILA class asserted is a subset of the above; it contains all of the above-named borrowers who received their loans on or after July 1, 1969 from any one of six defendants. After careful consideration of the multiple claims raised by the parties, we conclude that the class may be certified, though the TILA class must be somewhat narrower than plaintiffs suggest.

Before this suit may be maintained as a class action, all of the prerequisites of rule 23(a)[2] of the Federal Rules of Civil Procedure must be met. In addition, it must be demonstrated that the case falls within one of the subsections of rule 23(b). Plaintiffs bear the burden of demonstrating compliance with these requirements. *Aamco Automatic Transmissions, Inc. v. Tayloe*, 67 F.R.D. 440, 444 (E.D.Pa.1975); *Thompson v. T.F.I. Companies, Inc.*, 64 F.R.D. 140, 145 (N.D.Ill.1974).

With respect to the requirements of rule 23(a) and (b)(3), the defendants have raised a plethora of reasons why they believe this case should not be maintained as a class action. Because they have addressed the TILA and the antitrust counts separately, and because many of the issues are distinct, we will deal separately with the propriety of a class action for each of the two counts.

Also, for convenience and clarity we will defer our discussion of the applicability *vel non* of (b)(1) and (b)(2) until after we have dealt with the issues presented by 23(a) and (b)(3). Since we think that the issues presented with respect to (b)(1) and (b)(2) are the same for both the antitrust and the TILA count, we will consider them together.

## I. *The Antitrust Count*

Initially, defendants concede that the class is sufficiently numerous so that joinder would be impracticable. They also acknowledge the existence of common questions. Defendants have deferred discussion of the typicality requirement and combined it with their argument that, pursuant to rule 23(b)(3), common questions do not predominate. Perhaps this is because of the view that the typicality requirement is ambiguous and adds little or nothing to the other requirements of rule 23. *Sharp v. Coopers & Lybrand*, 70 F.R.D. 544, 548 (E.D.Pa.1976); *see, e. g., Fox v. Prudent Resources Trust*, 69 F.R.D. 74, 78 (E.D.Pa. 1975); 3B J. Moore, *Federal Practice* ¶ 23.-06–2 (2d ed. 1975). In any case we will defer any consideration of this claim until we reach the predominance issue.

### A. *Adequate Representation*

The sole remaining requirement under rule 23(a) is that the representative parties will adequately represent and protect the interests of the proposed class. In order to satisfy this requirement, plaintiffs must demonstrate that (1) they have no interests which are antagonistic to other members of the class, and (2) their attorney is capable of prosecuting the instant action with some degree of expertise. *Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Wetzel v. Liberty Mu-*

---

1. There are presently 22 named defendants with respect to the antitrust count. All defendants are savings and loan associations located in the Philadelphia area.

2. Rule 23(a) provides:

   "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*tual Insurance Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Dorfman v. First Boston Corp.*, 62 F.R.D. 466, 473 (E.D. Pa.1973).

Defendants' first contention is that plaintiffs are inadequate class representatives because they have a conflict with certain members of the class. The argument goes as follows. All defendants are savings and loan associations. The applicable state[3] and federal[4] laws under which they are chartered place ownership of the institution in the hands of its depositors. Should an institution be forced into liquidation, depositors' claims would have the lowest priority.[5]

Defendants estimate their total potential antitrust liability after trebling to be $22.5 million. Such an amount, they assert, would be far in excess of the available reserves of a number of defendants. Since co-conspirators are jointly and severally liable for all damages caused, *see Wainwright v. Kraftco Corp.*, 58 F.R.D. 9, 11–12 (N.D. Ga.1973), plaintiffs, if successful, could force the liquidation of a number of defendants.[6] Such a result could cause financial loss to those members of the class who are also depositors with their respective mortgagees.[7] Thus, it is asserted that many depositor-mortgagors might wish not to pursue this action because of the specter of liquidation. Such an interest on their part is adverse to those class representatives who are not depositors with their mortgagees.

Defendants have cited a number of cases to support their argument. These primarily involve situations where a former franchisor or stockholder seeks to represent a class which includes present franchisors or stockholders. *See, e. g., Thompson v. T.F.I. Companies, Inc., supra* at 148–49.

■ The major problem with defendants' contention is that there is nothing in the record to support it. We have no competent evidence[8] of the reserves of any of the defendants, nor the slightest idea what the total reserves are.

■ In addition, even if there had been adequate documentation of the possibility of liquidation, the asserted conflict is essentially speculative. Nothing presented to date has shown any reluctance by depositor-mortgagors to vindicate any rights they may have. Indeed, two of the named plaintiffs are depositor-mortgagors.[9] Under these circumstances there is no justification for assuming the existence of a conflict. *See Connor v. Highway Truck Drivers & Helpers, Local 107*, 378 F.Supp. 1069, 1075 (E.D.Pa.1974); *P.D.Q. Inc. v. Nissan Motor Corp.*, 61 F.R.D. 372, 376–77 (S.D.Fla.1973). Should adequate documentation of the alleged conflict develop at some later date,

---

3. Savings Association Code of 1967, 7 P.S. § 6020–1 et seq.

4. 12 C.F.R. § 544.1(b) (1976).

5. *E. g.* 7 P.S. § 6020–208.

6. While it is true that liability of each of the defendants would be joint and several, we have no doubt that each of the solvent defendants found to have joined the conspiracy could and would be required to contribute their proportionate share to the judgment.

7. This is probably true even though savings are guaranteed up to a maximum of $40,000. 12 C.F.R. § 564.3 (1976). At least one of the defendants has several depositors who have more than the $40,000 maximum on deposit, though the record does not reveal whether any of such persons also has a mortgage. Further, if liquidation should occur, all depositors might lose interest on their deposits for at least some period of time. *See Federal Savings & Loan Insurance Corp. v. Huttner*, 401 F.2d 58 (7th Cir. 1968).

8. Defendants (as well as plaintiffs) have made various assertions about the available reserves of some of the defendants in their briefs. Facts stated in a brief unaccompanied by anything else have no evidentiary value. *See Cisternas-Estay v. Immigration & Naturalization Service*, 531 F.2d 155, 157 n. 1 (3d Cir. 1976); *Braden v. University of Pittsburgh*, 477 F.2d 1, 6 (3d Cir. 1973).

9. It is true that one of the named plaintiffs who is also a depositor indicated some uncertainty when presented with the possibility of liquidation. Nevertheless, he has not withdrawn from this suit.

we will not hesitate to act pursuant to rule 23(c). Creating subclasses, or even narrowing the class remain as solutions should a real conflict arise. *See Tober v. Charnita, Inc.,* 58 F.R.D. 74, 80 (M.D.Pa.1973); *Herbst v. Able,* 47 F.R.D. 11, 15 (S.D.N.Y.1969). In the meantime, should any depositor-mortgagors desire not to assert any right which they may have, they will have the chance to opt out of the class pursuant to rule 23(c)(2). *See, e. g., Herbst v. Able, supra* at 15.

Defendants next argue that the named plaintiffs are merely nominal parties; the real parties are plaintiffs' counsel. It is contended that if such is the case, then plaintiffs are inadequate class representatives.

Two of the cases which defendants cite for the above proposition are factually inapposite to this case. In those cases,[10] the court refused to certify class actions where the attorneys involved had sought out persons willing to lend their names to a class action. We are satisfied that such was not the case here.[11] Also, this is not a case where there is any appearance of impropriety, as in the situation where a lawyer represents his partner who is acting as class representative. *See Kramer v. Scientific Control Corp.,* 534 F.2d 1085 (3d Cir. 1976).

Asserting that the named plaintiffs are wholly ignorant of what this case is about and what the underlying facts are, defendants contend on the authority of *In re Goldchip Funding Co.,* 61 F.R.D. 592 (M.D.Pa. 1974) that these plaintiffs are inadequate. In *Goldchip* the court stated:

"In my view, facts regarding the personal qualities of the representatives themselves are relevant, indeed necessary, in determining whether 'the representative parties will fairly and adequately protect the interests of the class.' . . . A proper representative can offer more to the prosecution of a class action than mere fulfillment of the procedural requirements of Rule 23. He can, for example, offer his personal knowledge of the factual circumstances, and aid in rendering decisions on practical and non-legal problems which arise during the course of litigation. An attorney who prosecutes a class action with unfettered discretion becomes, in fact, a representative of the class. This is an unacceptable situation because of the possible conflicts of interest involved. . . ." 61 F.R.D. at 594–95.

There is no doubt that the named plaintiffs have a very sketchy view of what this litigation is all about. We also do not doubt that counsel are proceeding in this case without significant restraints from the named plaintiffs. Nevertheless, we cannot agree that this thereby renders a class action inappropriate.

First of all, it strikes us as at least partially unrealistic to expect the named plaintiffs to have any significant personal knowledge of the facts in a case like this, involving an antitrust conspiracy. This is something which, if it can be established, will only be done after a great deal of investigation and discovery by counsel against a background of legal knowledge. *See Bogosian v. Gulf Oil Corp.,* 337 F.Supp. 1234, 1235–36 (E.D.Pa.1972). To require the class representative to be sophisticated and knowledgeable enough to help counsel in this quest would reduce the class action device, especially in complicated antitrust cases, to an impotent tool. *Cf. La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461, 465–66 (9th Cir. 1973). As we stated in *Dorfman v. First Boston Corp.,* 62 F.R.D. 466, 473 (E.D.Pa.1973):

---

**10.** *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 16 F.R.Serv.2d 1021 (N.D.Tex. 1972), *aff'd,* 482 F.2d 880 (5th Cir. 1973); *Carlisle v. LTV Electrosystems, Inc.,* 54 F.R.D. 237 (N.D.Tex.1972).

**11.** Plaintiffs' counsel submitted to us for in camera inspection the letter which they wrote to named plaintiffs. Significantly, the letter was sent only to those persons whom counsel had previously represented. Further belying any notion that plaintiffs are purely nominal is their willingness to pay several thousand dollars in costs should this action be unsuccessful. *See* note 15 *infra.*

"Neither the personality nor the motives of the plaintiffs is determinative of whether they will provide vigorous advocacy for the members of the class. Dorfman is obviously unschooled in the law and was flustered at her deposition but it can hardly be said that she, through her attorney, has been anything but a vigorous and tenacious plaintiff. The same may be said of Juster; principle, coupled with the hope of rectifying a claimed loss and the prospect of a substantial recovery, may be as strong a spur to vigorous prosecution as many other motivations."

■ The supposed unfettered discretion of counsel does not trouble us. Most lawyers, especially when representing unsophisticated litigants, have some degree of flexibility in their actions. Before counsel settle or dismiss this case, rule 23(e) requires our approval. Any fees to be paid counsel out of a monetary recovery would be awarded by the court, which has an obligation to protect the interests of the class members. *See In re Coordinated Pretrial Proceedings, Etc.,* 410 F.Supp. 680, 690 (D.Minn.1975). Further, if at any time we felt that counsel were not acting in the best interests of their clients, we would not hesitate to consider appropriate action pursuant to rule 23.

■ In their final attack upon the class representatives' adequacy, defendants contend that plaintiffs are unwilling to pay all of the necessary costs of this action.[12] This argument presents two issues: first, as a practical matter, have plaintiffs made a sufficient commitment to pay the costs; and second, if they have not, does this require a conclusion that they are inadequate class representatives?

■ Before proceeding it should be mentioned that plaintiffs' counsel have agreed to advance the costs of this litigation. However, in order to remain within the strictures of Disciplinary Rule 5-103(B) of the Code of Professional Responsibility,[13] this can only be done if the plaintiffs assume responsibility for reimbursing their counsel if the suit is ultimately unsuccessful. In the absence of such an agreement and the financial ability to live up to it, a number of courts have refused to permit a class action to proceed.[14] *See Dennis v. Saks & Co.,* 20 F.R.Serv.2d 994, 997–98 (S.D.N.Y.1975); *Bogus v. American Speech & Hearing Association,* 389 F.Supp. 327 (E.D.Pa.1975). *But see Sayre v. Abraham Lincoln Federal Savings & Loan Association,* 65 F.R.D. 379, 384–86 (E.D.Pa.1974); *P.D.Q. Inc. v. Nissan Motor Corp.,* 61 F.R.D. 372, 380–81 (S.D.Fla.1973).

■ Upon a careful consideration of the record, we are unable to say that the financial commitment of plaintiffs is inadequate at this time. It is undisputed that plaintiffs together have agreed to reimburse their counsel for costs advanced during this litigation up to $27,500.[15] Defendants have

12. It must be recognized that this argument and the discussion which follows is predicated, quite properly, on the possibility that plaintiffs will be unsuccessful. If they recover a judgment, they would be entitled to recover their costs. 15 U.S.C. § 15. Similarly, any settlement fund would be liable for the costs of producing it. *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973).

13. The rule provides:
"While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses."

14. Of course, even though a client may agree to reimburse his attorney, there is no mechanism to require such payment should the lawyer not insist upon it.

15. This averages out to almost $3,500 per named plaintiff. It seems at least a little odd that plaintiffs are willing to risk losing this amount when their antitrust damages (which are far larger than any potential TILA recovery) would be on the order of $500 after trebling if they are successful. *See Dennis v. Saks & Co.,* 20 F.R.Serv.2d 994, 997 (S.D.N.Y. 1975). However, if plaintiffs have concluded that the probability of success in this action is very high, then *taking such a chance may not* be economically irrational.

submitted five affidavits [16] which detail the costs of notifying mortgagors of the five banks involved.[17] Extrapolating from the figures presented therein,[18] it would appear that a reasonable average cost for mailing notice to each class member would be $.27.[19] Thus the cost of mailing notice to a class of 50,000 would be around $13,500. In addition, the cost of printing a notice with a return card must be added.[20]

The expense item about which the parties disagree is that of identification of the class members. Defendants' affidavits suggest that this would cost about $.29 per person,[21] or a total of about $14,500. If this item is included in the costs for which plaintiffs are liable, then the $27,500 commitment by plaintiffs would be inadequate. However, we agree with plaintiffs that the names of the class members are discoverable. Quite clearly they fall within the ambit of rules 34 and 26(b) of the Federal Rules of Civil Procedure. And since the cost of identifica-tion would be fairly nominal for the defendants (approximately $14,500 spread over 22 banks) we are inclined to think that we would not enter a protective order, or require plaintiffs to reimburse defendants for the costs of collecting this information. *See Sanders v. Levy,* 20 F.R.Serv.2d 1218, 1221 (S.D.N.Y.1975); *Richardson v. Hamilton International Corp.,* 62 F.R.D. 413, 423 (E.D.Pa.1974). *But see Popkin v. Wheelabrator-Frye, Inc.,* 20 F.R.Serv.2d 125 (S.D.N.Y.1975).

Thus the notice costs which plaintiffs must remain responsible for are in the range of $16,000. At this stage we are unable to say that plaintiffs have not made a sufficient commitment to allow this action to proceed. Having decided the factual question in favor of the plaintiffs, we need not deal with the issue of whether a class action may be maintained even if the named plaintiffs are unable or unwilling to bear the costs. *Compare, e. g., Sayre, supra*

16. Plaintiffs have presented some unsubstantiated assertions in their brief that the total cost of notice would not exceed $10,000. With absolutely nothing in the record to support these allegations, we will ignore them. *See* note 8 *supra.*

17. We list below for each affidavit submitted the name of the defendant, the estimated number of relevant mortgagors of each, and the average costs for identification and notification of each such mortgagor.

| Defendant | Number of Mortgagors | Average Identi-fication Costs | Average Mail-ing Costs |
|---|---|---|---|
| East Girard Savings Assn. | 7,161 | $.71 | $.27 |
| Intercounty Savings Assn. | 488 | .33 | .39 |
| Commonwealth Fed. Savings & Loan Assn. | 16,035 | .09 | .24 |
| First Fed. Savings & Loan Assn. | 1,850 | .51 | .25 |
| Metropolitan Fed. Savings & Loan Assn. | 5,828 | .25 | .33 |
| Total | 31,362 | .29 | .27 |

18. While only five of twenty-two defendants have submitted affidavits, these five have issued mortgages to an estimated 31,362 of the 50,000 persons who comprise the antitrust class.

19. *See* note 17 *supra.*

20. Neither party has submitted anything competent to show what the costs for this will be. Defendants, in their brief, estimate this cost at $2,500.

21. *See* note 17 *supra.*

at 384–86 *with, e. g., Dennis, supra* at 997–98.

We conclude that plaintiffs have satisfied the requirements of rule 23(a) with respect to the antitrust count.

### B. *Predominance of Common Questions*

Before this action may be certified as a rule 23(b)(3) class, we must conclude that questions common to the class predominate over individual ones, and that a class action is a superior procedural vehicle for adjudicating the rights of the parties. Defendants contend that individual questions predominate because: (1) victims of an antitrust conspiracy must show impact or injury in order to recover; (2) demonstration of a conspiracy on the part of defendants involves individual questions; (3) the statute of limitations is an individual question; and (4) damages will have to be calculated separately for each class member.

▆ Before addressing these arguments, we note that in section 1 Sherman Act cases, the existence *vel non* of a conspiracy has been recognized as an overriding issue common to the plaintiff class. *See State of Illinois v. Harper & Row Publishers, Inc.,* 301 F.Supp. 484, 488 (N.D.Ill.1969); *Philadelphia Electric Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452, 458 (E.D.Pa.1968) (citing cases).

▆ It is true that where there is a conspiracy and it is unclear from the agreement that a given plaintiff was injured thereby, some impact or injury must be proved in order to recover damages. *See Kline v. Coldwell, Banker & Co.,* 508 F.2d 226, 230–31 (9th Cir. 1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449

(1975). However, in a price-fixing or similar case, the fact of injury is presumed once a conspiracy is proven. *See In re Motor Vehicle Air Pollution Control Equipment,* 52 F.R.D. 398, 404 (C.D.Cal.1970). Or as Judge Gibbons recently remarked, albeit in a different context:

> "The only speculative element was whether overcharges resulted from the conspiracy, and if so, how much. Since I have never heard of a price-fixing conspiracy aimed at reducing prices to consumers I cannot take seriously the contention that the existence of overcharges involved a significantly speculative element in the case." *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 at 128 (3d Cir. 1976) (Gibbons, J., dissenting).

In the instant case, the payment of the alleged excess interest charge would be sufficient to satisfy the impact requirement. Since by definition all members of the class have made such a payment, there are no individual questions involved in this aspect of the claim.[22]

▆ Before any defendant may be held liable it must be shown that it was a participant in the conspiracy. Thus, each group (or subclass) of mortgagors of a particular defendant can recover only if there is proof that their bank knowingly entered into the conspiracy. Recovery by all plaintiffs will require proof of participation by each of the twenty-two defendant banks. Defendants claim that such proof as to each defendant will constitute individual questions.

We think this argument cannot stand. Each of the subclasses of plaintiffs has a common question—the participation *vel non* of their mortgagee in the conspiracy.[23] To hold that such proof will constitute individual questions for a *plaintiff* class[24] would

---

**22.** Defendants have argued that depending upon when a mortgagor made his monthly payments and the crediting practices of the defendant, it is possible that any alleged overcharges were minimal or even nonexistent. This is an issue which we feel is relevant to the calculation of damages, not the impact or injury question.

**23.** Of course, a question common to the entire class is whether a conspiracy in fact existed.

**24.** While not free from doubt, we read the discussion in *Kline v. Coldwell, Banker & Co.,* 508 F.2d 226, 231–33 (9th Cir. 1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449

contravene logic, common sense and the policies behind rule 23(b)(3). While it is conceivable that in some cases there would be so many alleged co-conspirators as to make a class action unmanageable, *see Kline v. Coldwell, Banker & Co., supra* at 235–36 (2000 defendants alleged to be members of a conspiracy), that is not the case here.

Defendants, demonstrating persistence which would put a bulldog to shame, argue that the statute of limitations will present individual questions.[25] They claim that unless certain class members can rely on the doctrine of fraudulent concealment, their claims will be time barred. While this argument might have merit if plaintiffs sought to rely on fraudulent concealment, *see* text accompanying notes 37–40 *infra,* nowhere in the complaint is there any mention of this in connection with the asserted antitrust violations. Since the merits of a plaintiff's claim are irrelevant for the purposes of a class action motion, it is of no moment that some of the class's claims may be time barred as defendants assert.[26] *See Eisen v. Carlisle & Jacquelin Co.,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

Finally, defendants claim that the existence of individual questions with respect to the calculation of damages precludes a conclusion that common questions predominate. We reject this argument, as have the vast majority of courts faced with it. It is not required that there be a unanimity of common questions, merely a preponderance. *See, e. g., Dorfman v. First Boston Corp.,* 62 F.R.D. 466, 474–75 (E.D. Pa.1973); *Dolgow v. Anderson,* 43 F.R.D. 472 (E.D.N.Y.1968). We conclude that with respect to the alleged antitrust violation, common questions do predominate.

## C. *Superiority*

Defendants next raise the "staggering liability" which each defendant will be subjected to if this action is successful. Relying on *Kline, supra,* defendants argue that this precludes a conclusion that a class action is the superior method for adjudication of these claims. In *Kline,*[27] where it was alleged that some 2,000 real estate brokers had conspired in setting a fee schedule, the court said:

"This means that the small individual operator faces a potential liability of upwards of three-quarters of a billion dollars for which all of his or her assets are responsible. The amount of a recovery in a lawsuit is not ordinarily of concern where a wrong has been inflicted and an injury suffered. But when 2,000 are joined in an action in which each is jointly and severally liable, the liability is increased in geometric progression. Such an award against each of 2,000 real estate broker defendants would shock the conscience." 508 F.2d at 234.

But whether this suit proceeds as a class action or not, the law places joint and several liability upon the defendants for all injuries caused by any conspiracy of which they were members. The class action device merely provides a procedure for adjudicating the respective rights of the parties. If defendants' liability shocks the conscience, it is the fault of the substantive law which places joint and several liability on co-conspirators, not the class action. We refuse to hold that the extent of defendants' liability affects the superiority of the class action procedure in this case.

---

(1975), as dealing with the propriety of certifying a defendants' class, an issue not present in this case. To the extent that either *Kline* or *In re Hotel Telephone Charges,* 500 F.2d 86, 89 (9th Cir. 1974), is inconsistent with our decision, we decline to follow it.

**25.** The applicable statute of limitations is four years. 15 U.S.C. § 15b.

**26.** Of course, modification of the class may be required if the defendants are successful in a motion to dismiss on these grounds.

**27.** *See also Marks v. San Francisco Real Estate Board,* 69 F.R.D. 353 (N.D.Cal.1975).

■ In their final attack on the propriety of a class action for the antitrust count, defendants argue that the class is unmanageable because of the high administrative costs in identifying and notifying the class. Defendants cite a number of cases which have considered the costs of notice in comparison with each class member's recovery in considering the superiority of a class action. *See Considine v. Park National Bank,* 64 F.R.D. 646, 648 (E.D.Tenn.1974); *Turoff v. Union Oil Co.,* 61 F.R.D. 51 (N.D. Ohio 1973). However, as a factual matter, the administrative costs in this case do not appear to be excessive in relation to the class's potential recovery.[28] Furthermore, although we are unaware of any case so holding, we do not understand the Supreme Court's opinion in *Eisen, supra,* to have precluded the taxing of class action notice costs in favor of a prevailing plaintiff. "[P]laintiff must *initially* bear the cost of notice to the class." 417 U.S. at 178, 94 S.Ct. at 2153 (emphasis added). *See Katz v. Carte Blanche Corp.,* 53 F.R.D. 539, 546 (W.D.Pa.1971), *rev'd on other grounds,* 496 F.2d 747 (3d Cir.), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); *cf. Partain v. First National Bank,* 59 F.R.D. 56, 62 (M.D.Ala.1973) (citing cases). The Clayton Act provides for the recovery of costs. 15 U.S.C. § 15.

We conclude that a class action is the most efficacious procedure for litigating the antitrust claims presented by plaintiffs.[29]

Accordingly, we will permit plaintiffs to proceed with this count as a class action pursuant to rule 23(b)(3).

## II. *The TILA Count*

### A. *Adequate Representation*

■ Beginning their attack with the adequate representation requirement of rule 23(a)(4), defendants argue that the named plaintiffs are inadequate; first because their claims are barred by the statute of limitations, and second because they have a conflict of interest with the unnamed plaintiffs. The statute of limitations argument is nonsense.[30] We have already held in this case that plaintiffs have adequately pleaded the doctrine of fraudulent concealment which serves to toll the statute. 66 F.R.D. 105, 107.

■ The argument that the named plaintiffs have conflicting interests because of the possibility that a large judgment will wipe out defendants, a renewal of defendants' argument in the antitrust claim, has perhaps even less merit than the previous claim. In 1974 Congress amended the TILA, 15 U.S.C. § 1640(a)(2)(B) to make the total maximum recovery of statutory damages in a class action the lesser of $100,000 or one percent of the net worth of the creditor.[31] Furthermore, defendants, if

---

**28.** As detailed *supra,* total notification costs (but not identification costs) are in the range of $.32 per class member. Both parties estimate each plaintiff's claim at $150 before trebling.

**29.** Defendants raised some further issues regarding the manageability of this action, primarily concerning possible purchases or sales of mortgages. We find no merit in these claims.

**30.** It occurs to us that this argument might have some merit if pressed in the context of the 23(a)(3) requirement of typicality. Nevertheless, given our modification of the class on common question grounds, *see* text accompanying notes 37–48 *infra,* this issue becomes moot.

**31.** Plaintiffs could also recover any actual damages which are proved. However, the recovery of actual damages as opposed to liquidated or statutory damages would not be "annihilating punishment" or indeed any kind of punishment. *See Ratner v. Chemical Bank New York Trust Co.,* 54 F.R.D. 412 (S.D.N.Y.1972). Actual damages would merely repay the plaintiffs whatever excess interest was charged in violation of the TILA. In any case a plaintiff has an extremely difficult task in attempting to prove actual damages under the Act. *See* Note, *Class Actions Under the Truth in Lending Act,* 83 Yale L.J. 1410, 1427, 1430 (1970); *cf.* Note, *Recent Developments in Truth in Lending Class Actions and Proposed Alternatives,* 27 Stan.L. Rev. 101 (1974).

found liable, would not be subject to joint and several liability as with the antitrust count.

The maximum recovery provisions present a number of other problems, however, which bear upon the adequacy of representation and the superiority of a class action. Because these issues all revolve around the recent amendments to the TILA, we will discuss them together. The TILA damage provisions state:

"(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part or part D of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

"(1) any actual damage sustained by such person as a result of the failure; "(2)(A) in the case of an individual action twice the amount of any finance charge in connection with the transaction, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; or

"(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery in such action shall not be more than the lesser of $100,000 or 1 per centum of the net worth of the creditor. * * *"

Thus, the minimum recovery in an *individual* action is $100. However, with the above mentioned maximum for a class action, it is clear that in some circumstances a class member will be precluded from recovering the $100 minimum for an individual action. Thus, if a subclass of mortgagors of a particular bank included more than 1,000 members, the $100,000 maximum recovery would leave each class member with statutory damages [32] of something under $100.[33] While it is not certain, it appears quite probable that the subclass of mortgagors of at least one defendant exceeds 1,000 in number.[34]

*Weathersby v. Fireside Thrift Co.,* Civ.No. 73–0563 (N.D.Cal. Feb. 25, 1975), cited by defendants, is distinguishable from the present case. Because of the maximum recovery provisions, the named plaintiff and an intervenor sought a guarantee that, if successful, their recovery would be several hundred dollars. Since this amount was larger than what their pro rata share (and the share of the class members) would be, the court concluded that the plaintiff and intervenor would not adequately protect the interests of the class.

Unlike *Weathersby*, the named plaintiffs seek no more than their pro rata share of any recovery. Further, even though a class member may receive less than the $100 minimum recovery for an individual action, we think this fact should not preclude class action status.

**32.** The Act also provides for the recovery of actual damages. We do not read the maximum recovery provision of § 1640(a)(2)(B) to apply to the recovery of actual damages. *See Agostine v. Sidcon Corp.,* 69 F.R.D. 437, 444 n. 6 (E.D.Pa.1975). However, even if plaintiffs can prove that they have suffered actual damages (no easy task under the Act, *see* note 31 *supra* ), each class member's total recovery will still be less under the stated conditions because of the maximum limitations on statutory damages.

**33.** It should be mentioned that even if the class is less than 1,000 the class members may recover less than $100 in statutory damages.

*See Agostine v. Sidcon Corp., supra* at 448. 15 U.S.C. § 1640(a) sets out the standards a judge must consider in making a statutory damage award to a class.

**34.** An affidavit from Metropolitan Federal Savings & Loan Association states that 5,828 mortgages were issued during the period January 1, 1968 to March 31, 1974. While the TILA class which we will certify will only include those mortgages issued after August 11, 1971, unless a disproportionate number occurred before that date, there will be considerably more than 1,000 mortgagors of Metropolitan in the class.

■ The amendments limiting recovery of statutory damages in TILA cases were an attempt by Congress to remove an impediment to the use of class actions. Previously, courts had refused to permit class actions to proceed in TILA cases because of the "annihilating punishment" that would be suffered by a creditor in a sizable class action where a minimum of $100 per plaintiff was awarded. *See, e. g., Ratner, supra; Graybeal v. American Savings & Loan Association*, 59 F.R.D. 7 (D.D.C.1973). To hold now that the amendments prevent a class action from being maintained would result in a judicially-decreed Catch 22. We think the interests of the class members can adequately be protected by informing them of the possibility of a reduced award when notice is sent to the class.[35] *See Agostine, supra* at 447. This will permit those who wish to litigate their claims individually in the hope of a greater recovery to do so. At the same time, it will serve to vindicate the rights of those who, through disinterest, inertia, unsophistication, wariness of the legal system or whatever, do not wish to proceed in an individual action.[36]

## B. *Predominance of Common Questions*

Defendants contend that because a large number of the members of the TILA class will have to rely on the doctrine of fraudulent concealment, common questions do not predominate.[37] We think this argument has merit, and will require modification of the TILA class which plaintiffs seek to represent.

The first complaint was filed on August 11, 1972. Although the statute of limitations for TILA actions is one year, 15 U.S.C. § 1640(e), plaintiffs seek to represent a class of mortgagors going back to July 1, 1969. It is obvious that in order for those plaintiffs whose settlements[38] occurred before August 12, 1971 to recover, they will have to establish that the statute was tolled because of fraudulent concealment.[39]

■ Before a plaintiff may rely on fraudulent concealment, he or she must show that "there has been no negligence or laches on the part of the plaintiff in coming to the knowledge of the fraud." *Bailey v. Glover*, 21 Wall. 342, 88 U.S. 342, 22 L.Ed. 636 (1875); *see Baker v. F & F Investment*, 420 F.2d 1191, 1199 (7th Cir.), *cert. denied*, 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 49 (1970). Thus with respect to each plaintiff whose claim would be otherwise time barred, there will have to be an inquiry into his or her knowledge at the time of settlement and beyond, his or her diligence in discovering the facts and perhaps even what representations were made by the various defendants. In addition, calculation of actual damages, if any are proven, will have to be done on an individual basis.[40] While it is a close question, we think that these individual inquiries preclude a conclu-

**35.** We would expect such notice to state clearly whether a reduced award is certain (i. e. where the class exceeds 1,000) or merely possible (class under 1,000). The choice of opting out and the rights and liabilities arising therefrom should also be explained in clear, concise, non-technical language.

**36.** *See* Note, *Class Actions Under the Truth in Lending Act*, 83 Yale L.J. 1410, 1416–17 & n. 40 (1974).

**37.** Since this is the only argument defendants raise on this issue, presumably they concede that absent the fraudulent concealment question, common questions predominate. We agree.

**38.** The statute of limitations begins to run as of the time the transaction was consummated. 371 F.Supp. 1282, 1284.

**39.** We have previously denied defendants' motion for summary judgment on precisely this ground because we found that plaintiffs had adequately pleaded fraudulent concealment in their second amended complaint. 66 F.R.D. 105, 107.

**40.** In most cases the existence of damages per se as an individual question does not prevent common questions from predominating. *See, e. g., Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). Nevertheless, when the common-individual scale is considered, the existence of individual damage issues must be weighed.

sion that common questions predominate. See *Speros v. Nelson*, 16 F.R.Serv.2d 1506, 1508 (D.Or.1973); *cf. White v. Deltona Corp.*, 66 F.R.D. 560, 564 (S.D.Fla.1975).

This problem can be solved, however, by limiting the plaintiff class to those who will not be required to rely on the doctrine of fraudulent concealment in order to prevail. While easily stated, determination of who is included in this class is considerably more complex.

■ The first inquiry we must undertake is to determine which of the named plaintiffs may remain as such. For if a named plaintiff would be time-barred without reliance on fraudulent concealment, he or she is not a member of the class which we have determined may be certified. And in order to represent a class, a named plaintiff must be a member of that class. *Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Haas v. Pittsburgh National Bank*, 526 F.2d 1083, 1096 n. 18 (3d Cir. 1975). A further complication is the requirement that for each defendant there be a named plaintiff with standing to assert the class's claims.[41] *Id.* at 1095. Thus, we must first determine which named plaintiffs may remain, and then which of the subclasses of plaintiffs have representatives remaining.

■ An initial issue which must be faced is whether the filing of a complaint by a plaintiff tolls the statute of limitations against a defendant for all members of the asserted class even though that plaintiff has no cause of action against the defendant. Thus, when the first complaint was filed in August, 1972, the Chevaliers, who were alleged to have a mortgage with Benjamin Franklin Federal Savings & Loan Association, also named as defendants, *inter alia*, Liberty Federal Savings & Loan Association and Metropolitan Federal, and purported to represent the class of mortgagors of those banks. While it is clear that the Chevaliers could not maintain this action against Metropolitan and Liberty because they have no standing, the question to be resolved is whether the statute of limitations was tolled for all mortgagors of these two banks. In *Haas v. Pittsburgh National Bank, supra*, the court held in an indistinguishable case that the filing of a complaint does toll the statute for all asserted members of the class who would have been included in the class[42] if the case had been permitted to proceed as a class action. Thus, under *Haas*, the filing of the complaint by the Chevaliers on August 11, 1972 tolled the statute of limitations for all mortgagors of the defendants named in the complaint.[43] Nor do we think this is affected by the fact that the Chevaliers were themselves concededly time-barred when the complaint was filed.[44] Whether the named plaintiff cannot proceed as such because he or she has no standing or because he or she is not a member of the class which is purportedly being represented (*i. e.* has no standing) makes no difference. In both cases the policy of preventing needless interventions in class actions will be served. *See American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 553–54, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Similarly the policies behind limitations periods—notice to defendants and prevention of stale claims—are fully served if the class is limited to those whose claims were not time-barred at

---

**41.** There are two exceptions to this requirement which the court noted, neither of which is relevant here. 526 F.2d at 1095 n. 15.

**42.** This limitation, *see Haas*, 526 F.2d at 1098 n. 26, does not affect the class which we will ultimately certify.

**43.** Defendants' protests to us that the Third Circuit misapplied the Supreme Court's holding

in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), are being directed to the wrong court. Even were we to agree with the defendants, which we do not, we are powerless to overrule the Third Circuit.

**44.** 371 F.Supp. at 1284.

the time of the complaint, as is being done here. *See id.*, 414 U.S. at 553–55, 94 S.Ct. 756; *Haas, supra* at 1097.

■ We feel, however, that this tolling doctrine can only be applied to defendants as of the time they were added as party defendants in one of the complaints filed by plaintiffs. Thus, for example, we hold that the statute of limitations was not tolled for mortgagors of Polonia Federal Savings & Loan Association until it was added as a defendant in the second amended complaint on May 6, 1974. *See Hellerstein v. Mather*, 360 F.Supp. 473, 475 (D.Colo.1973). Otherwise, defendants would be required to defend against actions of which they had no knowledge whatsoever until after the statute of limitations had run.[45]

With these ground rules set, it requires only mechanical application to the facts in order to identify the named plaintiffs who may proceed and the perimeters of the class. Each of the three amended complaints has added additional named plaintiffs as well as defendants. We list below for each of the complaints the relevant named parties and the dates which are necessary to determine which named plaintiffs may remain as such and represent the class.

| Complaint | Date | New Plaintiff(s) | Settlement Date | Plaintiff's Mortgagee | New Defendant(s) |
|---|---|---|---|---|---|
| First | 8/11/72 | -- | -- | -- | Liberty Metropolitan |
| Amended | 10/12/72 | Trist | 9/24/69 | First Fed. of Chester | First Fed. of Chester |
| Second Amended | 5/ 6/74 | Nemeroff | 10/31/72 | Metropolitan | Polonia Community |
|  |  | Friedman | 5/25/72 | Polonia |  |
|  |  | George | 4/ 7/72 | First Fed. of Chester |  |
|  |  | Zelten | 6/ 1/72 | Community |  |
| Third Amended | 7/18/75 | Mosesson | 8/17/72 | Liberty | Abraham Lincoln |
|  |  | Henry | 9/ 9/70 | Metropolitan |  |
|  |  | Bender | 1/18/74 | Abraham Lincoln |  |

From the above it can be seen that the filing of the complaint on August 11, 1972 tolled the statute of limitations for all mortgagors of Liberty and Metropolitan who had their settlement on or about August 12, 1971. This would include the Mosessons and the Nemeroffs. Similarly the amended complaint filed October 12, 1972 tolled the statute of limitations for the Georges who had their settlement on April 7, 1972. These three named plaintiffs are the only present ones who may proceed as such; all the others must rely on fraudulent concealment to toll the statute, and, therefore, are not members of the class which is to be certified. Since there are only mortgagors of Metropolitan, Liberty and First Federal of Chester remaining as named plaintiffs,[46] the class must be so limited. The Metropolitan and Liberty subclasses may include all mortgagors who had their settlement on or about August 12, 1971; the First Federal of Chester subclass may

---

**45.** Nor do we think this conclusion is affected by the fact that the initial complaint purported to sue a class of defendants. It is not until a class is certified and notice sent that members are expected to be aware of the action or exercise any of the attendant rights or duties. *Cf. American Pipe, supra*, 414 U.S. at 552, 94 S.Ct. 756.

**46.** Since we conclude that the Friedmans and Benders may not proceed as class representatives because of the statute of limitations problem, we see no need to deal with the contentions raised by defendants about their adequacy.

include all whose settlements occurred after October 12, 1971.[47]

With these modifications in the class, we conclude that common questions predominate.

### C. *Superiority*

■ The last issue which defendants raise in connection with a (b)(3) class is that a class action is not a superior way of handling these claims because of the incentives Congress has written into the TILA for individual actions.[48] Thus, a prevailing plaintiff in an individual action may recover actual damages, costs and attorney fees, as well as a minimum of $100 in statutory damages. 15 U.S.C. § 1640(a). We reject this argument for the reasons so ably expressed by Judge Bechtle in *Agostine v. Sidcon Corp.*, 69 F.R.D. 437, 447 (E.D.Pa. 1975):

> "The argument that the incentive for individual litigation necessitates a finding of non-superiority assumed that the minimum damage provision relates solely to consumer motivation to sue rather than a deterrent to creditors. While such may have been the case prior to the amendment of § 1640(a), Congress, in so amending, recognized that courts were not certifying class actions and that there was a need to encourage voluntary creditor compliance *via* potential class action liability. Second, many relatively unsophisticated borrowers are not conversant enough with Truth in Lending regulations to know they have not received full disclosures, and many claims would go unenforced. * * * Thirdly, to deny class action status in all Truth in Lending cases because costs and reasonable attorney's fees are provided for would have the effect of nullifying what Congress attempted to do by amending § 1640(a).

* * * While costs and reasonable attorney's fees might provide an incentive to litigate where an alleged violation can be defined as an isolated incident, such is not the case where, as here, there are hundreds of alleged violations almost all of which will go unremedied but for a class action." (Citations omitted.)

We conclude that the TILA count may proceed as a class pursuant to rule 23(b)(3).

### III. *Rule 23(b)(1) and (b)(2)*

Subdivision (1) of rule 23(b) requires that: "(1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests * * *."

In *Alsup v. Montgomery Ward & Co.*, 57 F.R.D. 89, 91–92 (N.D.Cal.1972), the court held that the risk of incompatible standards being established with respect to a defendant who had allegedly violated the TILA was "imaginary." *Accord Ratner v. Chemical Bank New York Trust Co.*, 54 F.R.D. 412, 414–15 (S.D.N.Y.1972); *Kristiansen v. John Mullins & Sons, Inc.*, 59 F.R.D. 99, 105 (E.D.N.Y.1973). *See also La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466–67 (9th Cir. 1973). Similarly, in this case we see little or no chance of varying standards being established. Further, the *Alsup* court noted that section (b)(1)(A) was not applicable where the party opposing the class ac-

---

**47.** Though this substantially reduces the size of the TILA class, we think it is still sufficiently large to satisfy the numerosity requirement.

**48.** Several courts before the recent amendments held that this incentive *plus* the "annihilating punishment" which defendants would be liable for required a finding of non-superiority. *See, e. g., Ratner v. Chemical Bank New York*

*Trust Co.*, 54 F.R.D. 412, 416 (S.D.N.Y.1972). However, since Congress amended the Act to place a maximum limit on an award of statutory damages, there are no courts of which we are aware that have denied a TILA class on these grounds. *Cf. Goldman v. First National Bank*, 532 F.2d 10 (7th Cir. 1976).

tion motion was willing to accept whatever the risk may be.

Subsection (b)(1)(B) is also inapplicable to the present case. This provision was intended to deal with situations where there are insufficient funds to satisfy numerous claims being pressed. *See* Advisory Committee's Note, 39 F.R.D. 98, 101 (1966); *Alsup, supra* at 92.

Plaintiffs, relying on *Stavrides v. Mellon Bank, N.A.*, 69 F.R.D. 424 (W.D.Pa.1975), contend that certification of this case would be proper under subsection (b)(2).[49] In *Stavrides*, the court held an antitrust action appropriate for (b)(2) treatment even though plaintiffs sought money damages as well as an injunction. The court did so because it felt that a (b)(3) action might be inappropriate and in reliance upon the Third Circuit's recent opinion in *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

In *Wetzel* the court noted the precise issue before it, 508 F.2d at 250:

" * * * [W]hether a district court, having determined that a Title VII suit brought in good faith for injunctive relief may be maintained under (b)(2), is required to redetermine that the suit be maintained under (b)(3) and comply with its procedural requirements once it concludes on a motion for summary judgment that changed conditions make injunctive relief no longer appropriate."

Holding that such was not the case, the court noted first that the conduct of the defendant-employer was actionable "on grounds generally applicable to the class" and that the relief sought was "relief with respect to the class as a whole;" and second that a Title VII suit is essentially equitable in nature and cannot be characterized as one primarily seeking money damages.

We do not think the present case is one which can be characterized as "essentially equitable in nature." While it is true that plaintiffs seek an injunction against defendants, this action is one where money damages predominate.[50] In addition, any injunctive relief granted would not be "with respect to the class as a whole." Indeed, since all of the class members have already paid the alleged extra interest charge without adequate disclosure, any injunctive relief would not affect them, but only future mortgagors. Finally, we think it important that the class certified have the protection afforded by (b)(3). Defendants have raised two grounds,[51] which although insufficient to deny class action status, point to the possibility that some class members may desire to exclude themselves from the class. Only (b)(3) will give them that opportunity. Thus, we conclude, as have the vast majority of courts faced with this question, that this action may not be maintained as a (b)(2) class. *See Marks v. San Francisco Real Estate Board*, 69 F.R.D. 353, 358 (N.D.Cal.1975); *Sommers v. Abraham Lincoln Federal Savings & Loan Association*, 66 F.R.D. 581, 589–90 (E.D.Pa.1975); *Thompson v. T.F.I. Companies, Inc.*, 64 F.R.D. 140, 149 (N.D.Ill.1974); *Kristiansen v. John Mullins & Sons, Inc.*, 59 F.R.D. 99, 105 (E.D.N.Y.1973); *Alsup v. Montgomery Ward & Co.*, 57 F.R.D. 89, 93 (N.D.Cal. 1972); *Goldman v. First National Bank of Chicago*, 56 F.R.D. 587, 592–93 (N.D.Ill. 1972), *rev'd on other grounds*, 532 F.2d 10 (7th Cir. 1976). If this case is to proceed in

---

**49.** Subsection (b)(2) reads:

" * * * [T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

**50.** Even if liability on the part of defendants is established, whether injunctive relief is thereby appropriate would be problematic. Plaintiffs have conceded that defendants have for the most part ceased engaging in the conduct challenged by this suit. *See, e. g., Alsup v. Montgomery Ward & Co.*, 57 F.R.D. 89, 92 (N.D.Cal. 1972).

**51.** We refer to the possibility that TILA class members may seek to opt out of the class and proceed in an individual action in the hope of recovering greater damages and the possibility that depositor-mortgagors in the antitrust class may wish not to be members of the class because of their concern about possible liquidation of their bank.

its present form [52] as a class action, it must be pursuant to (b)(3).

Counsel will submit a form of order in accordance with the foregoing opinion.

---

**52.** The situation would likely be different if plaintiffs sought to maintain this case solely as a class of future mortgagors and did not seek money damages.