See also, D.C. 83 F.R.D. 552.

**Nathan WOLFSON, Dorothy Wolfson and Marc D. Wolfson, and Byron M. Chandler and Diane V. Chandler, Individually and on Behalf of all Members of a Class of Borrowers Similarly Situated, Plaintiffs,**

v.

**ARTISANS SAVINGS BANK, Farmers Bank of the State of Delaware, Wilmington Savings Fund Society, Colonial National Bank, First Federal Savings and Loan Association of New Castle County, Home Federal Savings and Loan Association, Wilmington Trust Company, Ninth Ward Savings and Loan Association, Defendants.**

Civ. A. No. 76–179.

United States District Court,
D. Delaware.

July 17, 1979.

Frederick Knecht, Jr., and Robert B. Coonin, of Knecht, Greenstein & Berkowitz, Wilmington, Del., Arnold Levin, Gordon Gelfond, Michael D. Fishbein, and Josephine B. Stamm, of Adler, Barish, Daniels, Levin & Creskoff, Philadelphia, Pa., for plaintiffs.

Rodney M. Layton, Charles F. Richards, Jr., and Stephen E. Herrmann, of Richards, Layton & Finger, Wilmington, Del., for defendants Farmers Bank of the State of Delaware, Colonial Nat. Bank and Wilmington Trust Co.

Frank J. Miller, of Miller & Foulk, Wilmington, Del., for defendant First Federal Sav. and Loan Ass'n.

James M. Tunnell, Jr., William H. Sudell, Jr. and Richard D. Allen, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendants Wilmington Sav. Fund Society and Home Federal Sav. and Loan Ass'n.

Robert V. Huber, Wilmington, Del., for defendant Ninth Ward Sav. and Loan Ass'n.

David A. Eastburn, Wilmington, Del., for defendant Artisans Sav. Bank.

## OPINION

STAPLETON, District Judge:

The plaintiffs in this action have moved for class certification under F.R.C.P. 23(b)(3).[1] The defendants have raised a number of objections to certification, and have suggested that if a class is to be certified, it should be limited in a variety of ways. The Court finds that the requirements for Rule 23(b)(3) certification have been met for a plaintiff class consisting of all present mortgagors of the defendant banks whose mortgages were acquired on or after May 20, 1972, and whose loan agreements have at any time since that date required them to pay $\frac{1}{12}$ of yearly taxes and/or insurance charges every month into non-interest bearing escrow accounts.

Initially, the Court must find that the requirements of Rule 23(a) have been met. Defendants do not appear to challenge plaintiffs' assertions as to numerosity, and it is clear that joinder of all plaintiffs would be impracticable. Similarly, defendants apparently concede that common questions of law or fact exist in the case, fulfilling the requirement of Rule 23(a)(2). Those common questions revolve around the alleged existence of a conspiracy among the defendants to refuse to pay interest on required escrow accounts, and the unreasonableness of the resulting restraint of trade.

The defendants seriously dispute the adequacy of the plaintiffs' representation of the proposed class, and the typicality of their claims with those of other class members. On the issue of adequacy of representation, little needs to be said. The Third Circuit has stated:

> Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.

*Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247, *cert. denied,* 421 U.S. 1101, 95

---

1. Plaintiffs' counsel conceded at oral argument that 23(b)(2) certification would be inappropriate in light of the demand for treble damages.

S.Ct. 2415, 44 L.Ed.2d 679 (1975). The defendants have tried to show that the plaintiffs are too ignorant of the facts of their case and of the legal claims they are asserting to represent the interests of others effectively. I am not persuaded. The Chandlers know that their bank uses their escrowed money without paying them interest on it. They are willing to undertake the costs of this litigation, and have been cooperative in the discovery stage. The fact that they may not have detailed knowledge of the mortgage practices of the various defendants does not disqualify them as representatives of the class. "To require the class representative to be sophisticated and knowledgeable enough to help counsel in [the extensive investigation] would reduce the class action device, especially in complicated antitrust cases, to an impotent tool." *Chevalier v. Baird Savings Ass'n,* 72 F.R.D. 140, 146 (E.D.Pa.1976).

■ Next the defendants assert that the Chandlers' claims are not typical of the claims of other mortgagors because the Chandlers need only prove that their bank, First Federal, was part of a conspiracy in 1976 in order to recover, and they have no need to prove participation on the part of any other particular defendant at any particular time. This argument has been rejected by a number of courts in class actions where conspiracy is alleged. *See, e. g., Green v. Wolf Corp.,* 406 F.2d 291 (2nd Cir. 1968); *Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975); *Lewis v. Capital Mortgage Investments,* 78 F.R.D. 295 (D.Md.1977). It is rejected here as well. It is essential to the Chandlers' claim not only to prove the escrow practices of their own bank but also to prove the participation of their bank with other banks in a conspiracy not to pay interest on escrowed funds. Prior to the Court's decision, they cannot know whether they will be successful in proving the participation in the conspiracy of any given bank at any given time. Moreover, they can reasonably anticipate that the chances of securing a finding that First Federal was involved in a conspiracy in 1976 will be augmented by evidence showing a conspiracy with many members existing over a substantial period of time. For these reasons, it is in the Chandlers' interest to offer evidence tending to show the participation of as many banks as possible over as long a period as possible. Moreover, it appears from the evidence tendered during the summary judgment proceedings that plaintiffs, in attempting to prove their own claim, will rely primarily on expert economic analysis which will be as relevant to each of the other defendants as to First Federal.

■ The defendants also attempt to defeat or limit certification by asserting that the gravamen of the complaint is individual injury rather than conspiracy. However, under the circumstances of this case it seems clear that the plaintiffs can prove "fact of damage" on a class-wide basis by proving an illegal conspiracy which had the effect of maintaining anticompetitive terms in required escrow accounts. *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 455 (3d Cir. 1977); *In re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322 (E.D.Pa.1976). ". . . [I]n a price-fixing or similar case, the fact of injury is presumed once a conspiracy is proven." *Chevalier v. Baird Savings Ass'n,* 72 F.R.D. 140, 149 (E.D.Pa. 1976). It may be that individual hearings will be required to determine individual damages for each class member, but that is not to be confused with the "fact of damage" requirement, and "should not preclude class determination when the common issues which determine liability predominate." *Bogosian, supra,* at 456.

■ Finally, the defendants argue that plaintiffs are atypical because under federal regulations, their bank was required to escrow for taxes and perhaps for insurance. But the plaintiffs do not object to the requirement of escrow *per se;* it is the conspiracy to refuse to pay interest on required escrow payments which is central to their complaint. The federal regulations do not require the escrow accounts to be non-interest bearing. Thus, any effect those regulations may have on the practices of First Federal does not affect the typicality of the Chandlers' claim.

All four requirements of Rule 23(a) having been met, I now move to a consideration of the requirements of Rule 23(b)(3): that questions common to the class predominate over questions which affect individual class members, and that the class action is superior to other available methods of litigating the issues. The defendants challenge certification on both grounds.

Generally, the allegation of an antitrust conspiracy is sufficient to establish a predominance of common questions. See 4 H. Newberg, *Class Actions* § 7524 (1977); *Chevalier v. Baird Savings, supra,* at 149. The defendants point out that there may be some individual questions to be litigated in the case. But the fact that these questions exist does not preclude a finding that common issues will predominate at trial. The common questions which will predominate include: (a) whether the defendants conspired to deny interest on required escrow accounts; (b) whether a restraint of trade or commerce resulted from the defendants' alleged conspiracy; (c) whether such restraint of trade was unreasonable; and (d) whether the plaintiff class suffered damages as a result of the defendants' actions.

The defendants also argue that the class action is not superior to other methods of litigation. They suggest that the case proceed as a "test case" which would allow similarly situated mortgagors to take advantage of a finding of liability after the trial. I find defendants' basic premise to be in error, however. In order for the Chandlers to recover in a "test case", they would have to prove the existence of a conspiracy in 1976. While, as earlier noted, they have ample motivation to tender evidence tending to show a conspiracy before that time, the only matter in issue would be the existence of a conspiracy as of that date. The Court might well make no finding at all about the earlier period and, even if it did, those members of the putative class who obtained their financing before 1976 would be unable to rely upon that finding of evidentiary fact to foreclose the defendant banks from contesting liability. *See, e. g., Restatement, Judgments* § 68, comment p. Accordingly, the test case approach, in addition to the fact that it would involve a

multiplicity of suits, would be an inefficient way of proceeding with the claims involved in this case. A class action, on the other hand, will finally adjudicate at least the liability issue for each member of the class.

Three defendants submitted supplemental briefs opposing class action certification. Some of their arguments have been addressed above, but one does deserve mention here. The Wilmington Savings Fund Society contends that the Chandlers lack standing to assert claims of WSFS mortgagors who were required to escrow before 1973, when conventional and VA mortgagors were allowed to waive escrowing. By the time the Chandlers applied for their mortgage in 1976, WSFS required escrowing only on FHA mortgages. WSFS argues that since the Chandlers did not get an FHA mortgage, they were not harmed by any escrowing practice of WSFS, and cannot represent WSFS mortgagors.

The defendants seem to forget that what is being alleged is a conspiracy to refuse to pay interest on escrow payments in those cases where escrowing is required by the defendant bank. (January 23, 1979, Slip Op. at 13). It may be that none of the conventional or VA mortgagors of WSFS will be class members when the class is so defined. But the Chandlers clearly have standing to assert the claims of other class members who have been harmed by the alleged conspiracy. This includes at very least the present FHA mortgagors of WSFS whose required escrow accounts do not pay interest.

I do, however, agree with the defendants that the certified class should be limited so as to exclude those members of the putative class who press claims which accrued more than four years prior to the commencement of suit and who, in order to escape a limitations bar, assert that the defendants have been guilty of fraudulent concealment. Each of the members of the putative class will have to show that (1) he or she did not learn about his or her claim until after May 20, 1972, (2) that he or she exercised reasonable diligence preceding that date, and (3) that the defendants took affirmative steps to make others believe

that no claims existed. The first two issues are ones relating to individual members of the class and this fact has led a number of courts to conclude that common questions do not predominate in analogous situations where the plaintiffs must prove fraudulent concealment. *E. g., Chevalier v. Baird, supra.* I need not reach that issue, however, because the Chandlers' claim is not typical of the claims of these members of the putative class and they cannot adequately represent them.

The Chandlers maintain that they are motivated to prove the existence of a conspiracy and that, in doing so, they will necessarily prove a "coverup" by the defendants. While they do not comment on the matter, presumably the other two issues necessary to a fraudulent concealment claim would be left for subsequent determination on an individual basis. The problem with the Chandlers' argument is that proving a conspiracy is quite a different thing from proving the third element of fraudulent concealment. Judge Hufstedler explained that element in *Rutledge v. Boston Woven Hose and Rubber Co.,* 576 F.2d 248, 250 (9th Cir. 1978) as follows:

> To avoid the bar of limitation by invoking the concept of fraudulent concealment, the plaintiff must allege facts showing affirmative conduct on the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief. Silence or passive conduct of the defendant is not deemed fraudulent, unless the relationship of the parties imposes a duty upon the defendant to make disclosure.

The fact of the matter is that the Chandlers have no interest in proving any of the elements of fraudulent concealment, and that if their announced plan of proving the conspiracy through economic analysis of the market is carried through, there is no reason to expect that affirmative acts of the kind described in the *Rutledge* case will be shown. For this reason I conclude that the

plaintiff class should not include those presiding claims which accrued prior to May 20, 1972.[2]

Finally, the plaintiffs also have requested the certification of a defendant class. However, they have done nothing to suggest the existence of similarly situated defendants other than those already joined in the suit; and, if these others exist, they have done nothing to show that their joinder as defendants would be impracticable. Therefore, plaintiffs' motion for the certification of a defendant class will be denied.

As soon as possible, plaintiffs should present the Court with a proposal for notifying members of the plaintiff class of this action in accordance with Rule 23(c).

---

2. It is true that these members of the class may also have claims for a later period, but I see no practical alternative other than allowing them to press all of their claims against the defendants in independent actions. If plaintiffs have such a practical alternative to suggest, they may do so promptly.