**Hope KENDLER and Sheldon J. Tashman, on behalf of themselves and all other charge account customers of Bloomingdale's similarly situated, Plaintiffs,**

**v.**

**FEDERATED DEPARTMENT STORES, INC., Defendant.**

**No. 77 Civ. 4340.**

United States District Court, S. D. New York.

Jan. 13, 1981.

689

Norris D. Wolff, Terri S. Feinstein, Kleinberg, Kaplan, Wolff, Cohen & Burrows, P.C., New York City, for plaintiffs.

Abe Krash, Jerome I. Chapman, Stephen M. Sacks, Lawrence V. Stein, Ronald B. Ravikoff, Arnold & Porter, Washington, D. C., Noel Rubinton, New York City, for defendant.

## OPINION AND ORDER

PIERCE, District Judge.

Plaintiffs Hope Kendler and Sheldon J. Tashman currently maintain charge accounts at the Bloomingdale's Division of defendant Federated Department Stores, Inc. (hereinafter "Bloomingdale's"). They bring this action charging that Bloomingdale's engages in price fixing and monopolization in violation of federal antitrust laws.

On December 1, 1977 plaintiffs Kendler and Tashman moved for an order pursuant to Rule 23 Fed.R.Civ.P. declaring that this suit may be maintained as a class action and certifying them as class representatives. On October 26, 1977, in its answer to plaintiffs' complaint, Bloomingdale's asserted two counterclaims—one against the named plaintiff Kendler and another against the unnamed members of the proposed class. On June 19, 1979 plaintiffs moved pursuant to Rules 11 and 12 Fed.R. Civ.P. for an order dismissing these counterclaims. By order dated December 21, 1979, these two motions were consolidated for consideration. Interim discovery on the issue of class certification was authorized at a pre-trial conference held before the undersigned on December 15, 1977, and since October 1978 has been conducted under the supervision of Magistrate Kent Sinclair. (See Order of Reference dated October 30, 1978).

For the reasons set forth below, plaintiffs' motion for class certification is denied. The plaintiffs' motion to dismiss the counterclaim against the plaintiff Kendler is denied and the defendant's counterclaim against the unnamed plaintiffs is moot and dismissed without prejudice.

*Facts*

Plaintiff Hope Kendler originally opened her account with Bloomingdale's in 1972 in the name, Hope Adler. This account fell into arrears, was referred to the collection department of the store and subsequently closed. By June of 1973 the account had been paid in full. Kendler's second account was opened in February 1974 in the names of herself and her husband. In December of 1974 the store was notified of Mr. Kendler's death and no further payments on the account was made. In January of 1975 the account was closed and a balance of $469.39 remains unpaid. In May of 1975 Kendler opened a third account at Bloomingdale's which remains open and active. Plaintiff Tashman's account with Bloomingdale's was opened in 1970 and remains active. (Affidavit of James Kassas, Vice President for Credit Operations, ¶¶ 7, 8, 9, annexed to Defendant's Memorandum of Points and Authorities as Exh. 7).

The complaint herein was filed shortly after the appearance of two articles in the New York Times describing preliminary investigations by the Federal Trade Commission into pricing activities of Bloomingdale's. It alleges, *inter alia*, that the defendant has conspired to fix prices and monopolize the clothing market by using "its superior bargaining position and preeminence in the marketplace to coerce suppliers to force Bloomingdale's competitors to adhere to a policy of maintaining resale prices by refusing to deal, or threatening to refuse to deal, with any supplier that sells to a competing retailer that does not maintain prices maintained by Bloomingdale's . . . ." (Complaint ¶ 25(a)).

The gravamen of the plaintiffs' complaint is that Bloomingdale's and its suppliers have conspired to refuse to sell "high quality men's, women's and children's apparel, clothing and accessories" (hereinafter "the products"—see ¶ 4 of Complaint) to discounters within the immediate competitive area of the defendant's stores. Plaintiffs claim that the existence of this alleged conspiracy between Bloomingdale's and its suppliers (the latter are not named as defendants herein) "resulted in prices being maintained at a higher level than would have been reached under competitive conditions." (Plaintiffs' Supplemental Memorandum of

Law dated July 10, 1979, at page 14). Plaintiffs charge that the alleged conspiracy between Bloomingdale's and its suppliers is predatory price-fixing and an unlawful restraint of trade in violation of the Sherman Act (15 U.S.C. §§ 1 & 2), the Clayton Act (15 U.S.C. §§ 15 & 26), and § 340 of the New York General Business Law.

Defendant's counterclaims against the plaintiff Kendler and other unnamed plaintiffs seek payment of charge account balances which are "due, owing and unpaid." (Defendant's Answer ¶ 48). No counterclaim for unpaid balances is asserted against plaintiff Tashman.

Pursuant to Fed.R.Civ.P. Rule 23 plaintiffs seek to maintain this suit as a class action. They propose to represent a class of persons comprised of "All charge account customers of Bloomingdale's . . . who purchased products at one or more Bloomingdale's stores during the period from September 1, 1970 to date." (Complaint ¶ 6). (See p. 4, *supra*, for definition of "products"). While the plaintiffs have not indicated how many customers would be included in such a class, the defendant estimates that the proposed class would consist of 1.9 million members. Bloomingdale's has its main store in Manhattan and a total of fifteen branches in Massachusetts, New York, Pennsylvania, New Jersey, Connecticut, Maryland and Virginia; only ten of the branches sell products which are the subject of this litigation. (Defendant's Memorandum of Points and Authorities, at 19, n.7).

## Class Certification

In order to maintain an action on behalf of a class under Rule 23 a plaintiff must satisfy the four requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3).[1] The plaintiffs bear the burden of establishing that the Rule's requirements are satisfied. *Free World Foreign Cars, Inc. v. Alfa Romeo*, 55 F.R.D. 26 (S.D.N.Y. 1972). These requirements, as they relate to the facts herein, will be considered seriatim.

## Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all parties would be impracticable. While the plaintiffs have not established the size of the proposed class, they do not dispute defendant's estimate of 1.9 million potential class members. Using this projection the Court finds sufficient basis upon which to conclude that the proposed class of persons is so numerous that the joinder of individual claimants as parties would be impracticable.

## Existence and Predominance of Common Questions of Law and Fact

Under Rule 23(a)(2) not every question of fact and law must be common to every member of the class, yet, it is clear that common questions must predominate. Rule 23(b)(3), Fed.R.Civ.P., *Windham v. American Brands*, 565 F.2d 59 (4th Cir. 1977) (en banc). Because the requirements

1. Rule 23(a) provides:
 "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
 Since plaintiffs herein seek certification under Rule 23(b)(3) they must also satisfy the requirements of that rule.
 "An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
 * * * * * *

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

of Rules 23(a)(2) and 23(b)(3) largely overlap herein, the Court will consider the requirements of the Rules jointly.

Plaintiffs maintain that the questions of law and fact common to the class are:

1. Whether defendant conspired with certain of its suppliers to maintain prices on the sale of the products during the period from September 1, 1970 to date.

2. Whether in fact prices were thereby maintained.

3. Whether the prices paid by class members were higher than they would have been absent a conspiracy to maintain prices.

4. Whether defendant does not and will not purchase products from suppliers who also furnish the same products to retailers that discount and are located in defendant's competitive areas.

The defendant opposes class certification asserting that no element of the antitrust claim alleged herein can be established on a class-wide basis.

The allegations of a price-fixing or other anti-competitive conspiracy are often sufficient to establish a predominance of common questions. *Axelrod v. Saks & Co.*, 77 F.R.D. 441 (E.D.Pa.1978); *Kromer v. Saks & Co.*, 1977–2 Trade Cases, ¶ 61,771 (S.D.N.Y.1977); *Dennis v. Saks & Co.*, 20 F.R.Serv.2d 994 (S.D.N.Y.1975); *State of Illinois v. Harper & Row Publishers, Inc.*, 301 F.Supp. 484, 487 (N.D.Ill.1969). Such claims generally involve "a common core of identical questions" making the efficiency of a class action apparent. *Id.* In determining whether there exists a common core of identical questions such that common issues predominate, the Court must look to the allegations of the complaint and the evidence to be presented in support of the factual allegations of the class. *In Re Transit Company Tire Antitrust Litigation*, 67 F.R.D. 59, 72 (W.D.Mo.1975).

Here the essence of the plaintiffs' allegations is that Bloomingdale's uses its superior bargaining power and preeminence in the marketplace to cause prices to be maintained illegally by coercing suppliers into refusing to deal with discounters located in the same market area as Bloomingdale's and by refusing to buy or threatening to refuse to buy from suppliers that sell to discounters. The effect of this alleged illegal conduct is said to be that price and product competition are suppressed or eliminated (Complaint ¶¶ 29(a) and 29(b)) and plaintiffs are forced to buy at Bloomingdale's at higher prices because products are not otherwise available elsewhere at lower prices (Complaint ¶ 29(c)). The plaintiffs' allegation is *not* that Bloomingdale's and its largely unnamed co-conspirators actually set, fixed or predetermined prices. Rather, it is charged, the *actions* of the defendant and its suppliers resulted in artificially maintained higher prices.

In their motion for class certification, plaintiffs rely primarily upon three related consumer class action antitrust actions against retail department stores. *Axelrod v. Saks & Co., supra; Kromer v. Saks & Co., supra; Dennis v. Saks & Co., supra.* While in many respects these actions, each of which was certified as a class action under Rule 23, bear striking similarity to the instant action, they differ significantly in the averments of their respective complaints, and are clearly distinguishable. In *Axelrod* the plaintiffs alleged that defendants (Saks Fifth Avenue, Bergdorf Goodman and Bonwit Teller) conspired to establish "uniform retail prices through the adoption of uniform mark-up prices" and "induced manufacturers to use such uniform retail prices as manufacturers' suggested retail prices and to withhold women's clothing from retailers who sell below such uniform prices." *Axelrod v. Saks & Co., supra*, at 443. The averments in *Dennis* and *Kromer* are virtually identical. The basic claim of the plaintiffs in each of those actions rested upon "the existence of a price fixing conspiracy on the part of the defendants", *Dennis v. Saks & Co., supra*, at 997, *all of whom were named as defendants.*

By contrast, despite plaintiffs' protestations to the contrary, the primary issue herein is *not* "whether defendant conspired to eliminate competition" (Plaintiffs' Memorandum of Law in Support of Motion

for Class Action Certification, dated November 30, 1977 at 10) or "whether the conspiracy to fix prices existed" (Plaintiffs' Supplemental Memorandum of Law in Further Support of Motion for Class Action Certification, dated July 10, 1979, at 11) for *no single overall conspiracy to maintain prices among Bloomingdale's and its suppliers has been alleged by plaintiffs*. Thus, in order to establish defendant's liability in this action, plaintiffs must demonstrate the existence of 16,000 [2] mini-conspiracies between Bloomingdale's, as represented by the 219 buyers [3] it employed during the relevant period, and its suppliers. These alleged *multiple* conspiracies are essentially unrelated and proof bearing on the existence and impact of one such conspiracy would have little, if any, relevance to establishing the existence of other such conspiracies. The plaintiffs have failed to satisfactorily identify the common factor which would avoid the proliferation of thousands of individual conspiracy trials which appears inherent in this situation. Merely invoking the incantation "conspiracy" does not insure that common questions will predominate especially where as here the Court is not "persuaded that ... proof of conspiracy or proof of illegal conduct ... may be accomplished by generalized means." *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 233 (9th Cir. 1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975).

No "generalized means" of establishing the conspiracy(ies) has been presented by plaintiffs. Further, the Court cannot speculate as to what common element unites these multitudinous transactions. Despite the extensive discovery had herein, it appears that there has not been uncovered or demonstrated any policy or guideline issued by Bloomingdale's to its buyers directing or suggesting the alleged illegal conduct complained of herein.

Moreover, assuming plaintiffs can establish the existence of these claimed conspiracies, they must also demonstrate that higher prices were thereby maintained at stores in seven states comprising eleven different competitive markets.[4] Again, in the absence of a proffer of the "generalized means" by which this will be proved, common questions of law and fact do not appear to predominate.

With the plethora of evidence, unique to each supplier, which would be required to demonstrate the conspiracies alleged herein, it is reasonable to conclude, as the Court does, that any attempt to litigate these claims in a single proceeding would soon deteriorate into multitudinous individual law suits. This is precisely the result which Rule 23 is designed to prevent. Thus, in the absence of a showing of identifiable common issues, amenable to proof on a class-wide basis, the Court concludes that common issues of law and fact do not predominate herein and plaintiffs have not satisfied the requirements of Rules 23(a)(2) and 23(b)(3).

*Typicality of Claims and Adequacy of Representation*

■ Because of the res judicata effect of any judgment on all class members the "court must carefully scrutinize the adequacy of representation in all class actions." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968) (*Eisen II*). Both the class representatives and their counsel [5] must

---

**2.** Bloomingdale's estimates that it is likely to have purchased items from "more than 16,000 suppliers, ranging from Fortune 500 companies to home craftsmen." (Affidavit of Leslie Gordon, Controller of Bloomingdale's, ‷2 annexed to Defendant's Memorandum of Points and Authorities as Exh. 1).

**3.** "219 different individuals held 499 buying positions in departments outside of Cosmetics and Home Furnishings during the period involved in this case." (Affidavit of Ronald B. Ravikoff, an attorney associated with the firm representing defendant, ‷3, annexed to De-

fendant's Memorandum of Points and Authorities as Exh. 5).

**4.** *See* page 691, *supra*. The main Bloomingdale's store and ten branches outside of New York City sell products which are the subjects of this litigation.

**5.** Since class certification is being denied on grounds of lack of predominance of common issues of law and fact and lack of manageability, the Court declines to determine whether plaintiffs' counsel would fairly and adequately protect the interests of the class.

fairly and adequately represent the interests of the absent class members.

 While Kendler relies upon her current Bloomingdale's account to establish her status as class representative, the Court finds that the amounts allegedly due and owing to Bloomingdale's by plaintiff Kendler under her alleged unpaid inactive account which she shared with her late husband render her not a suitable representative of the proposed class. Indeed, the amount allegedly unpaid, to wit, $469.39, would likely exceed any recovery the plaintiff Kendler might receive herein. It is not unreasonable to conclude that, if this matter were to proceed as a class action with Kendler as class representative, she may well place her own interest in resolving her alleged liability to Bloomingdale's above the interests of the class she proposes to represent.

The Court further notes that Kendler's current account was obtained at Bloomingdale's based upon an application in which she indicated that she had never held an account at Bloomingdale's. (Kassas affidavit ¶ 9). The record reflects that when she gave that response she had held two other accounts. (Kassas affidavit ¶¶ 7, 8). Plaintiff Kendler's presumed interest in maintaining her current Bloomingdale's account, which may well be subject to cancellation on the basis of these seemingly inaccurate statements in her application, render her personal interests antagonistic to those of the proposed class.

Given these circumstances, the Court concludes that Kendler's interests are likely to conflict with the objectives and interests of the absent class members she proposes to protect. *Rossini v. Ogilvy & Mather, Inc.*, 80 F.R.D. 131 (S.D.N.Y.1978).

The Court finds that the claims of the plaintiff Tashman are typical of the claims of the class and he would appear to have standing to represent them. *Reiter v. Sonotone*, 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979). Were this matter to be certified as a class action, based upon the present state of the record, Tashman would appear to be a proper class representative.

*Superiority of the Class Action Format*

If the requirements of Rule 23(a) are satisfied, a class action may be maintained if, in addition, the requirements of Rule 23(b)(3) are fulfilled. In addition to the predominance of common questions of law or fact, the class action must be superior to other available methods for the fair and efficient adjudication of the controversy. The inquiry herein focuses on whether the action would be manageable (Rule 23(b)(3)(D)) and "achieve the economies of time, effort and expense" which class actions were designed to accomplish. *City of New York v. General Motors Corp.*, 60 F.R.D. 393, 395 (S.D.N.Y.1973), *appeal dismissed*, 501 F.2d 639 (2d Cir. 1974). Determinations of manageability require "a pragmatic evaluation of courtroom reality" for while it may be "tempting to say: why not let everyone who asserts a somewhat related grievance come into a common arena to resolve their controversy ... on a moment's reflection, it should be apparent that the capacities of judges and juries to absorb the factual situations thus presented are finite and that courthouses are not coliseums." *City of New York v. International Pipe & Ceramic Corp.*, 410 F.2d 295, 298 (2d Cir. 1969).

 The difficulties presented in determining the issues of liability herein as discussed above are not unrelated to the manageability of this action for "the predominance prerequisite is addressed as much to issue manageability as it is to administrative or housekeeping manageability." Proceedings of the Judicial Conference of the Eighth Judicial Circuit, June 1974, Freeman, *Current Issues in Class Action Litigation*, 70 F.R.D. 251, 298. These complexities are compounded by the fact that damages in this antitrust price-fixing action must be ascertained on an individual basis. Only persons *actually* injured in their business or property may claim damages under the Clayton Act. (15 U.S.C. § 15); *Windham v. American Brands, supra*, at 66–68; *Kline v. Coldwell, Banker & Co., supra*, at 231–35; *Shumate & Co., Inc. v. National*

*Association of Securities Dealers, Inc.*, 509 F.2d 147, 155 (5th Cir.), *cert. denied*, 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 97 (1975). A review of the facts of this action indicates conclusively to this Court that the difficulties likely to be encountered in management of the matter compel denial of the motion for class certification.

The class sought to be represented herein includes any person who purchased any item of high quality men's, women's or children's apparel, clothing or accessories at any one of eleven Bloomingdale's stores in seven states from Massachusetts to Virginia, during a ten year period from September 1, 1970 to date. The proposed class apparently would consist of approximately 1.9 million customers who made an inestimable number of purchases. A trial on liability as well as damages would involve proof of transactions between 219 Bloomingdale's buyers and their 16,000 suppliers.[6] The Court is cognizant that neither size, *In Re Antibiotic Antitrust Actions*, 333 F.Supp. 278 (S.D.N.Y.1971), nor difficulty in assessing damages, *City of New York v. General Motors Corp., supra*, is necessarily determinative of manageability. Here, however, the Court confronts an enormous proposed class lacking commonality with regard to both liability and damages and which spans virtually half the Eastern seaboard. The proposed class must establish that prices were artificially maintained on almost every conceivable item of wearing apparel and must then demonstrate that class members were injured individually by the defendant's behavior.

In the face of this evident complexity, the traditional means employed in undertaking to manage large class actions are inadequate here. While bifurcation of the issues of liability and damages is encouraged in

actions such as this, *Link v. Mercedes-Benz of North America*, 21 F.R.Serv.2d 1294 appeal denied, 550 F.2d 860 (3d Cir. 1977), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1978), such a solution is preferable where there are generalized issues on liability. Even then "if no general measure of damages can be proven and any trial [on damages] will involve separate analysis of the impact of the conspiracy on thousands of different styles of clothing" class certification would appear inappropriate. *Dennis v. Saks & Co., supra*, at 999. The plaintiffs have presented no formula for ascertaining damages; their suggestion that the proposed class could be sub-divided, without a workable proposal for sub-classifications, is merely idle speculation of no assistance whatsoever in resolving this matter.

The cases relied upon by the plaintiffs, *Axelrod v. Saks & Co., supra; Kroner v. Saks & Co., supra*, and *Dennis v. Saks & Co., supra*, where the existence of a generalized conspiracy presented common issues regarding liability, achieved the requisite manageability by establishing a minimum purchase requirement ($250) for class membership, and limited the actions to purchasers of women's clothing. In addition, in these related actions the Court certified classes within tightly defined geographic perimeters.[7]

The Court recognizes that "dismissal for management reasons, in view of the public interest involved in class actions, should be the exception rather than the rule." *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 38–39 (quoting *Manual for Complex Litigation*, Part I, § 1.43 n.36 (rev. ed. 1973)). Yet, while the class action approach can provide a fair and efficient adjudication of complex controversies, the

---

6. *See*, notes 2 and 3, *infra.*

7. The plaintiffs in *Axelrod* represented charge account customers of the defendant stores who had billing addresses outside the New York metropolitan area, and resided in several named counties in Pennsylvania, New Jersey or in the state of Delaware. The *Dennis* class consisted of all charge account customers of the same defendant stores with billing address-

es in the New York metropolitan area (defined as New York City, the counties of Nassau, Suffolk, Westchester and Rockland in New York State, several named counties in New Jersey, and Fairfield County in Connecticut). The plaintiffs in *Kroner* represented a class of customers of defendant stores who resided in the remaining counties of New York or in the District of Columbia.

Court cannot be unmindful of the tremendous administrative burden and management problems created by ill-advised massive class action litigation. The concerns expressed by Judge Pollack in *Schaffner v. Chemical Bank*, 339 F.Supp. 329, 337 (S.D. N.Y.1972) are particularly appropriate here:

"[T]he notion of utilizing a jury trial in a class suit containing the varied problems certain to abound herein, is enough to chill any further discussion of the required superiority of a class claim over other available methods for the fair and efficient adjudication of the controversy. Such a trial, whether one trial or the multiple mini-trials probably required, would withdraw from all other usefulness for years to come the federal judicial personnel involved . . . . [O]ne might relevantly ask—what public interest would be served by devoting the public's facilities in this way and what just purpose requires such a colossal marshalling of judicial resources and their supporting personnel?"

The presence of individualized issues of both liability and damages, coupled with the number and complexity of the transactions which would have to be litigated herein, present difficulties in the management of this litigation which tip decidedly against the use of a class action approach in this action. Accordingly, the Court concludes that a class action is not "superior to other available methods for the fair and efficient adjudication" of this controversy. The motion for class certification is denied.

*Defendant's Counterclaims*

Bloomingdale's asserts counterclaims against plaintiff Kendler and unnamed plaintiffs for charges "due, owing and unpaid" (Defendant Answer ¶ 48) on their accounts.

Since class certification has been denied, any counterclaims which might have been asserted against unnamed plaintiffs who might have been parties herein are moot and are dismissed without prejudice.

The counterclaim against the named plaintiff Kendler may be pursued by the defendant.

*Conclusions*

For the reasons set forth hereinabove, plaintiffs' motion for class certification is denied. The plaintiffs may pursue the allegations of their complaint in their individual capacities only.

The counterclaims against unnamed plaintiffs are moot and are dismissed without prejudice. The defendant may pursue its counterclaim against the plaintiff Kendler.

The parties are directed to appear before the undersigned for a pre-trial conference on March 10, 1981 at 9:30 in the forenoon in courtroom 706. In the interim, discovery on behalf of the individual plaintiffs may proceed under the supervision of Magistrate Sinclair.

SO ORDERED.