## In re ALCOHOLIC BEVERAGES LITIGATION.

**This Matter Relates to all Cases.**

**No. CV–81–0092.**

United States District Court,
E. D. New York.

March 9, 1982.

of law or fact common to the class; (3) the claims of the representative parties be typical of the claims of the class; and (4) the representative parties be able fairly and adequately to protect the interests of the class. For class certification under Rule 23(b)(3), a court must also find, in addition, that—

"the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

Kaplan, Kilsheimer & Foley by Robert M. Kaplan, Richard J. Kilsheimer, and Pomerantz, Levy, Haudek & Block by Stanley Grossman, New York City, for plaintiff.

Windels Marx Davies & Ives by Anthony Dean, Andrew N. Grass, Jr., New York City, for defendants.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

Plaintiffs, operators of a variety of liquor stores, restaurants, bars, and catering services, seek class certification under Rules 23(a) and (b)(3) to bring this antitrust action on behalf of "[a]ll persons, excluding defendants, their subsidiaries, and affiliates, who purchased alcoholic beverages directly from defendants during the period December 23, 1976 through, at least, January 6, 1981."

Defendants in this litigation are alleged to be the six major wholesale distributors of alcoholic beverages in the metropolitan New York area. The consolidated complaint alleges that, beginning as early as July 1976 and continuing at least until January 1981, the defendants and their co-conspirators engaged in a combination and conspiracy to fix, maintain, and stabilize the prices of alcoholic beverages sold by defendants and the terms and conditions of sale. The injury alleged to have resulted from defendants' acts is that plaintiffs and members of the proposed class have paid more for alcoholic beverages purchased from defendants than they would have paid, but for defendants' unlawful conduct.

Plaintiffs have made their motion under Rules 23(a) and (b)(3). Rule 23(a) requires that (1) the class be so numerous that joinder is impractical; (2) there exist questions

Defendants oppose the certification motion, contending that, although the numerosity requirement is satisfied and "the allegation of a conspiracy may be reviewed as common to the asserted class, as required by the threshold standard of Rule 23(a)(2)," the plaintiffs have failed to establish (1) the typicality of their claims, (2) the adequacy of their proposed representation, (3) the predominance of common questions of law or fact, and (4) the manageability and superiority of proceeding with this litigation as a class action. Defendants also state with respect to the questions they raise concerning the qualifications of named plaintiffs to serve as class representatives that "such questions are of sufficient weight to entitle defendants to further limited discovery prior to the adjudication of plaintiffs' motion." To that end, defendants propose a set of interrogatories. Finally, defendants submit that, if a class is certified, the number of certified class representatives and counsel should be limited.

## 324

*Discussion of the Certification Motion*

■ As a preliminary matter, it must be noted that the plaintiffs bear the burden of demonstrating that every requirement has been satisfied. 3B Moore's Federal Practice ¶ 23, 02–2 at 23–96 (2d ed. 1978).

*Rule 23(a)*

■ (1) *Numerosity.* The class is alleged to include in excess of 2,000 members. As was stated earlier, both parties agree that the defined class satisfies the numerosity requirement. (The fact that the size of the proposed class has not been exactly determined is not a fatal defect in the motion; a class action may proceed upon estimates as to the size of the proposed class. *Kendler v. Federated Department Stores, Inc.,* 88 F.R.D. 688 (S.D.N.Y. 1981); *Hedges Interprises, Inc. v. Continental Group, Inc.,* 81 F.R.D. 461 (E.D. Pa. 1979); *Amswiss International Corp. v. Heublein, Inc.,* 69 F.R.D. 663 (N.D. Ga. 1975).)

■ (2) *Commonality.* The very nature of the case—involving allegations of antitrust conspiracy among defendants—appears to insure that the commonality requirement is satisfied. As was stated by the court in *In re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322, 335 (E.D. Pa. 1976), "[a]ntitrust price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy." *See also Jennings Oil Co., Inc. v. Mobil Oil Corp.,* 80 F.R.D. 124 (S.D.N.Y. 1978). The defendants do not dispute plaintiffs' contentions that this requirement has been met.

■ (3) *Typicality.* Rule 23(a)(3) requires that the claims of the representative parties be typical of the claims of the class. This requirement has been deemed satisfied when the claims of the representatives and other class members are based on the same legal or remedial theory and there are no antagonistic interests between the two groups. *In re South Central States Bakery Products,* 86 F.R.D. 407 (M.D. La. 1980); *Jennings Oil Co. v. Mobil Oil Corp., supra.*

There has been general agreement that the existence of varying fact patterns to support the claims of individual class members does not mandate a finding of a lack of typicality, as long as the claims arise out of the same legal or remedial theory. *Christy v. Hammel,* 87 F.R.D. 381 (M.D. Pa. 1980); *In re South Central States Bakery Products, supra.* Since the claims here are based on what appears to be the identical theory and since there are no demonstrated antagonistic interests between the representative parties and the class members, the typicality requirement is satisfied.

Plaintiffs claim essentially that the defendants unlawfully combined or conspired to fix the prices and terms and conditions of sale of alcoholic beverages and that plaintiffs were injured as a result. As the court stated in *Minnesota v. United States Steel Corp.,* 44 F.R.D. 559, 567 (D. Minn. 1967), "[s]ince the representative parties need prove a conspiracy, its effectuation, and damages therefrom—precisely what the absentees must prove to recover—the representative claims can hardly be considered atypical." *See also In re South Central States Bakery Products, supra; Jennings Oil Co. v. Mobil Oil Corp., supra; In re Sugar Industry Antitrust Litigation, supra.*

■ It is not significant for the purposes of satisfying this requirement that the plaintiffs, who operate a variety of different types of businesses, e.g., liquor stores, restaurants, and bars, seek to represent those who are engaged in the same types of business as well as those engaged in other types of business, e.g., clubs and hotels, since the differences do not seriously affect the typical claim. *See City of New York v. Darling Delaware, Inc.,* 1976–1 Trade Cases, ¶ 60,812 (S.D.N.Y. 1976). As the plaintiffs point out, all purchasers paid the same prices, and all purchasers were eligible for the same terms.

■ Similarly, the fact that the liquor and wine industry is a complex one and, thus, that there are numerous products with varying prices and conditions of sale and different purchasing patterns does not mandate a finding of lack of typicality. In *In*

*re South Central States Bakery Products, supra* at 417, the court held that,

"[a]lthough various purchasers of bakery products, members of the proposed class, bought through different mechanisms . . . the essential claim of both [the plaintiff] and the class members is that the prices paid were established by combination or conspiracy. The mere fact that all of the methods through which the alleged conspiracy was effected were not used with respect to [the plaintiff], or the fact that [the plaintiff] did not purchase from all defendants, does not determine that the claim of [the plaintiff] lacks typicality under Rule 23(a)(3)."

Finally, since claims covering the entire period of the conspiracy are asserted by one or more plaintiffs, the fact that some of the named plaintiffs did not purchase throughout the entire period does not mean that the typicality requirement is not satisfied. Nor does it, in the circumstances of this case, require a finding that there is no typicality because some of the plaintiffs did not commence business until sometime after the alleged conspiracy began. Other named plaintiffs were purchasing liquor from the defendants from the beginning of the period. *Compare J.W.T., Inc. v. Joseph E. Seagram & Sons, Inc.,* 63 F.R.D. 139 (N.D. Ill. 1974) (the plaintiff was the only representative, and the fact that he was incapable of prosecuting certain claims meant that they would not be prosecuted at all).

As to the named plaintiffs who are no longer in the liquor business, there is also no reason to bar them from representative status, given the presence of other class representatives who remain customers of defendants. As the court stated in *Shelter Realty Corp. v. Allied Maintenance Corp.,* 75 F.R.D. 34, 39 (S.D.N.Y. 1977), *appeal dismissed,* 574 F.2d 656 (2d Cir. 1978),

"[t]he likelihood of conflict between past and present customers of the defendant seems more imagined than real. As plaintiffs point out, while such tension has been regarded as a possible problem in franchise situations, *see Free World Foreign Cars, Inc. v. Alfa Romeo,* 55 F.R.D. 26, 29 (S.D.N.Y. 1972), in the ordinary commercial relationship, the likelihood of divergent interests between past and present customers is of greatly reduced import and unlikely to cause a schism in the class." [1]

Since the fact that some of the plaintiffs did not purchase throughout the entire period does not require a finding that the typicality requirement has not been met, the first two interrogatories proposed by the defendants addressed to this case are unnecessary at this stage of the litigation, and the discovery request as to these interrogatories is denied.

(4) *Adequacy of Representation.* The fourth and final requirement of Rule 23(a) is that "the representative parties . . . fairly and adequately protect the interests of the class." This requirement has been interpreted to embrace both the competence of the legal counsel and the statute and interest of the named representative parties themselves. The representatives must be of such a character as to assure the vigorous prosecution of the action so that the members' rights are certain to be protected. The representatives' honesty, conscientiousness, and other affirmative personal qualities are relevant to the inquiry. "[I]f the representatives have a conflict of interest or if there is some antagonism between the representatives and those of the other class members, it is unlikely that the court will find that Rule 23(a)(4) has been satisfied." Wright and Miller, *Federal Practice and Procedure,*

---

1. The defendants cite one case involving past and present customers in which the court found a lack of typicality because of the potential for antagonism. *See Plekowski v. Ralston Purina Co.,* 68 F.R.D. 443 (M.D. Ga. 1975), *appeal dismissed,* 557 F.2d 1218 (5th Cir. 1977). In that case the plaintiff, a past customer, was the only representative, and the court took as a strong inference of the antagonism the fact that no current customers had sought to intervene in the action. There is no possibility of drawing any such inference here, where past and present customers have grouped together to bring this suit.

§ 1766, pp. 632–34. In this case, I find that both the plaintiffs' counsel and the plaintiffs themselves will insure fair and adequate protection of the interests of the class.

There is no dispute as to the competence of counsel to prosecute this litigation vigorously. The dispute focuses on the adequacy of the representation by the named plaintiffs themselves of the absent class members, as the defendants contend that the plaintiffs do not possess the necessary personal qualities, that the willingness of the plaintiffs to finance the litigation is unclear, and that there exists a possibility of antagonistic and conflicting interests. Having to some extent considered defendants' arguments with regard to the possibility of antagonism in the context of the typicality requirement, I conclude that the interests of the named plaintiffs are not antagonistic to those of the class they seek to represent for purposes of the adequacy of representation requirement as well. Plaintiffs have not displayed any personal qualities that would suggest that they are unfit to represent the class. The statements in seven of the plaintiffs' affidavits that the defendants refer to are not in fact misrepresentations, and thus there is no evidence of a failure to adhere to the " 'highest standards' of honesty, integrity and candor." (Defendants' Memorandum of Law, p. 24) Finally, plaintiffs have demonstrated sufficient financial ability to meet the adequacy of representation requirement. Although a few courts have thought it appropriate in certain situations to scrutinize the moving party's ability to pay before certifying a class, *see, e.g., Ralston v. Volkswagenwerk, A.G.,* 61 F.R.D. 427 (W.D. Mo. 1973), most courts have not adopted such a practice. In general, the courts have shunned such inquiries, *see, e.g., Klein v. Checker Motors Corp.,* 87 F.R.D. 5 (N.D. Ill. 1979); *Sanderson v. Winner,* 507 F.2d 477 (10th Cir. 1974), *cert. denied sub nom. Nis-*san Motor Corp. v. Sanderson, 421 U.S. 914, 95 S.Ct. 1573, 43 L.Ed.2d 780 (1975), especially where, as here, the attorneys representing the plaintiffs have indicated a willingness to advance all costs of litigation, and defendants have not disputed their ability to do so. *See, e.g., Kamens v. Horizon Corp.,* 81 F.R.D. 444 (S.D.N.Y. 1979); *Sayre v. Abraham Lincoln Federal Savings & Loan Ass'n,* 65 F.R.D. 379 (E.D. Pa. 1974), *as amended,* 69 F.R.D. 117 (E.D. Pa. 1975). Since the Court has determined that further inquiry into the plaintiffs' finances is unnecessary at this stage, the defendants' request for the disclosure of financial information in the third proposed interrogatory is denied. *See Sanderson v. Winner, supra; Klein v. Checker Motors Corp., supra.*

*Rule 23(b)(3)*

Because I am satisfied that all of the requirements of Rule 23(a) are satisfied, I move on to consider whether plaintiffs have established that common questions predominate and that class action would be superior to any alternative method of proceeding with this litigation, as required by Rule 23(b)(3).

(1) *Predominance of Common Questions.* Under Rule 23(b)(3) a party seeking class certification must establish not only that common questions exist, but that they "predominate over any questions affecting only individual members." I conclude that plaintiffs have proved a predominance of common questions.

As a general rule in antitrust price-fixing cases, questions common to the members of the class predominate over questions affecting only individual members. *See, e.g., Wolfson v. Artisans Savings Bank,* 83 F.R.D. 547 (D. Del. 1979); *Shelter Realty Corp. v. Allied Maintenance Corp., supra; In re Master Key Antitrust Litigation,* 70 F.R.D. 23 (D. Conn.), *app. dismissed,* 528 F.2d 5 (2d Cir. 1975).[2] The fact that the

---

**2.** One of the cases defendants rely on as an exception to this general rule, *Kendler v. Federated Department Stores, Inc.,* 88 F.R.D. 688 (S.D.N.Y. 1981), was not in fact an antitrust price-fixing case. In that case Judge Pierce stated that "[t]he allegations of a price-fixing scheme or other anti-competitive conspiracy are often sufficient to establish a predominance of common questions," and then went on to say that the case before him was not such a case:

industry involved in the litigation is a complex one is not sufficient to establish that class certification is inappropriate. *See, e.g., In re Folding Cartons Antitrust Litigation,* 75 F.R.D. 727, 734 (N.D. Ill. 1977), in which the court noted that "contentions of infinite diversity of product, marketing practices, and pricing have been made in numerous cases and rejected. Courts have consistently found the conspiracy issue the overriding, predominant question." *See also In re South Central States Bakery Products Antitrust Litigation, supra; Shelter Realty Corp. v. Allied Maintenance Corp., supra.*

 Allegations of antitrust conspiracy[3] are not alone sufficient to establish a preponderance of common questions. *But cf. Wolfson v. Artisans Savings Bank, supra* at 551; *Jennings Oil Co., Inc. v. Mobil Oil Corp., supra; Chevalier v. Baird Savings Ass'n,* 72 F.R.D. 140, 149 (E.D. Pa. 1976). On the contrary, it is appropriate to look beyond the simple allegation of conspiracy to determine whether the "impact" or "injury" said to have resulted from the conspiracy seems likely to be established on a class-wide basis. However, as a general

rule, "an illegal price-fixing scheme presumptively impacts upon all purchasers of a price-fixed product in a conspiratorially affected market."[4] *In re Cement and Concrete Antitrust Litigation,* 1979–1 Trade Cases ¶ 62,502 at p. 76,924 (D. Ariz. 1979). *See also, In re Master Key Antitrust Litigation, supra,* 528 F.2d at 12, n. 11 ("If the appellees establish at the trial for liability that the defendants engaged in an unlawful national conspiracy which had the effect of stabilizing prices above competitive levels, and further established that the appellees were consumers of that product, we would think that the jury could reasonably conclude that appellants' conduct caused injury to each appellee.").

 Finally, the fact that each class member's damages will be different and, thus, will require individualized treatment does not prevent one from concluding that common questions predominate. As pointed out in *Shelter Realty Corp. v. Allied Maintenance Corp., supra,* 75 F.R.D. at 37,

> "[i]f defendants' argument [that the requirement of individualized proof on the question of damages is in itself sufficient to preclude class treatment] were uncriti-

---

"[T]he primary issue herein is *not* 'whether defendant conspired to eliminate competition' ... or 'whether the conspiracy to fix prices existed,' ... for *no single overall conspiracy to maintain prices among Bloomingdale's and its suppliers has been alleged by plaintiffs." Id.* at 692–93 (emphasis in original).

**3.** The defendants attempt to argue that the case does not involve a single conspiracy, but rather a number of "unrelated" conspiracies—the alleged "credit" conspiracy, the alleged "post-off" conspiracy, and so forth—and that different elements of proof and different sets of plaintiffs would be involved in each alleged conspiracy, thus making class action inappropriate. Such an argument is unpersuasive; plaintiffs are alleging that defendants were involved in one conspiracy, "to fix, maintain and stabilize the prices of alcoholic beverages sold by defendants within the New York Metropolitan area," and the allegations with respect to credit arrangements, discounts, and post-offs relate to that conspiracy. As the court stated in *In re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322, 347–48 (E.D. Pa. 1976), "[t]he various elements of the conspiracy are not to be segregated from each other but are to be viewed as a whole."

**4.** Some courts in other circuits have taken a different position. The Fifth Circuit held in *Alabama v. Blue Bird Body Co., Inc.,* 573 F.2d 309 (5th Cir. 1978), that, although generalized proof of impact would be proper in some antitrust conspiracy cases, where there is no uniformity in quality or price of the products, e.g., where the products are not standardized, the question of impact must be dealt with individually, and thus common questions do not predominate. There is no suggestion that the products involved here are not standardized; thus the qualification in *Blue Bird Body Co.* does not apply. Similarly, the Fourth Circuit has held that in some situations it is necessary to handle the impact question on an individual basis. In *Windham v. American Brands, Inc.,* 565 F.2d 59 (4th Cir. 1977), the Court of Appeals stated that, where the issue of impact fails to lend itself to a "mechanical calculation," common questions do not predominate, and class action would be inappropriate. In this case, where the fact of purchase would establish impact or injury if an unlawful conspiracy to fix prices were proved, the issue does appear to lend itself to a relatively "mechanical calculation."

cally accepted, there would be little if any place for the class action device in the adjudication of antitrust claims. Such a result should not be and has not been readily embraced by the various courts confronted with the same argument. The predominance requirement calls only for predominance, not exclusivity, of common questions." (Citations omitted) *See also In re Fine Paper Antitrust Litigation,* 82 F.R.D. 143 (E.D. Pa. 1979). A damage formula may be appropriate here, as the plaintiffs suggest, but it is not necessary to find that such a formula would dispose of the damages question in order to conclude that common questions do predominate. *See Shelter Realty Corp. v. Allied Maintenance Corp., supra.*

■ (2) *Superiority of Class Action.* Since no alternative available methods for resolving the predominating common questions of law and fact have been suggested, I conclude that proceeding with this litigation as a class action is superior to proceeding under any other available method.

#### Limiting the Representatives

■ There is no need to limit the number of class representatives or their attorneys in this class action. The plaintiffs' counsel have established a system designed to administer and monitor the work performed and to prevent duplicative work. As long as that system functions properly and the attorneys keep careful records distinguishing between work done for their clients individually and work done for the class, I see no reason to disturb the arrangement under which the plaintiffs are presently working.

Accordingly, plaintiffs' motion for certification of a plaintiff class is granted.

The parties are directed to appear in Courtroom No. 6, United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York, for a status conference on the 6th day of April, 1982, at 4:30 p.m.

The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.