### In re PRESSURE SENSITIVE LABELSTOCK ANTITRUST LITIGATION.

**MDL No. 1556.**

United States District Court, M.D. Pennsylvania.

Feb. 17, 2005.

Stewart M. Weltman, Cohen, Milstein, Hausfeld & Toll, PLLC, Washington, DC, Joseph A. Murphy, Murrphy, Piazza, & Genello, P.C., Joseph P. Coviello, Joseph E. Mariotti, Coviello & Mariotti, LLC, Mary D. Walsh–Dempsey, Thomas J. Gilbride, O'Malley & Langan, P.C., Todd J. O'Malley, Scranton, PA, Steven A. Asher, Fox Rothschild, LLP, Howard J. Sedran, Levin, Fishbein, Sedran & Berman, Steven J. Greenfogel, Meredith, Cohen, Greenfogel & Skimick, P.C., Ira Neil Richards, Peter D. Winebrake, Trujillo, Rodriguez & Richards, LLC., Eugene A. Spector, John A. Macoretta, Spector, Roseman & Kodroff, Philadelphia, PA, Mark J. Conway, Dunmore, PA, Richard I. Creighton, Keating, Muething & Klekamp P.L.L., Cincinnati, OH, W. Joseph Bruckner, Lockridge, Grindal & Nauen, Samuel D. Heins, Heins, Mills & Colson, PLC, Minneapolis, MN, Joseph M. Barton, Steven O. Sidener, Gold, Bennett, Cera & Sidener, L.L.P., San Francisco, CA, Craig L. Briskin, Goodkind, Labaton, Rudoff & Sucharow, LLP, New York City, Kenneth Wexler, Chicago, IL, for Plaintiffs.

Charles J. Phillips, Leisawitz Heller Abramowitch Phillips, P.C., Wyomissing, PA, Jack M. Stover, Buchanan Ingersoll, Harrisburg, PA, J. Thomas Rosch, Joshua N. Holian, Karen E. Silverman, Latham & Watkins LLP, San Francisco, CA, Matthew B. Mock, Timothy B. Hardwicke, Latham & Watkins, Patrick J. Ahern, Baker & McKenzie, Chicago, IL, Jackson N. Steele, Hamilton Gaskins Fay & Moon PLLC, Charlotte, NC, Christopher M. Curran, White & Case, LLP, Julia E. McEvoy, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

VANASKIE, Chief Judge.

By Order entered on April 15, 2004, discovery in this putative class action was limited to class certification issues. On December 6, 2004, following unsuccessful efforts to reach mutual agreement, Defendants moved to compel discovery. (Dkt. Entry 112). Defendants' motion challenges (1) the sufficiency of Plaintiffs' document production and a number of their interrogatory answers; and (2) the merits of Plaintiff's objections to three categories of discovery requests. Oral argument on the discovery motion was heard on January 25, 2005. As a result of the discussion at oral argument, the parties agreed to continue to confer in an attempt to resolve Defendants' concerns with respect to the sufficiency of certain discovery responses and document production. By letters dated February 8, 2005, both the Plaintiffs and Defendants informed the Court that progress has been made on that aspect of the discovery motion and that the parties will notify the Court should Court intervention be required. As to the objections to the three categories of information sought by Defendants, the parties are in agreement that judicial resolution is required.

The categories of information at issue are: (1) Plaintiffs' purchases of self-adhesive label stock from non-manufacturer, non-defendant suppliers; (2) Plaintiffs' financial statements and other documents relevant to Plaintiffs' financial condition; and (3) "Downstream" data regarding Plaintiffs' sales to their customers. Plaintiffs contend that none of the three categories of information is relevant to any class certification issue. Defendants insist that they are entitled to wide-ranging discovery in light of the "fact intensive inquiry" a district court must undertake in determining whether a class should be certified.

(Reply Br. In Supp. of Mot. to Compel, Dkt. Entry 120, at 9.)

The starting point for determining whether a discovery request falls within the ambit of permissible inquiry is, of course, Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii).

Rule 26(b)(2)(iii) authorizes a court to prohibit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

At this stage of the case, the question is whether any of the proposed discovery is relevant to a class certification issue. As set forth in Rule 23 of the Federal Rules of Civil Procedure, the issues pertinent to class certification include the size of the putative class; the commonality of questions of law or fact to the proposed class; the typicality of the claims or defenses of the representative parties in relation to the claims or defenses of the class; the adequacy of the representative parties to protect the interests of the class; the predominance of common questions of fact and law; and the superiority of resolution by class action as compared to other methods for adjudicating the controversy. Each category of information challenged by Plaintiffs here will be assessed for purposes of determining its potential relevance to one or more of these class certification issues.

## A. Purchases of Labelstock from Non–Manufacturer, Non–Defendant Suppliers

Plaintiffs, citing *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), argue that because any recovery in this action will be limited to overcharges on direct purchases from Defendant producers of self-adhesive labelstock, any discovery of Plaintiffs' purchases from "non-conspirator middlemen or wholesalers . . . is irrelevant to any issue in this case, much less any legitimate class certification issue before this Court." (Br. in Opp. to Mot. to Compel, Dkt. Entry 115, at 4.) How plaintiffs acquire labelstock, however, may be pertinent to the issues of commonality and predominance. Significantly, Plaintiffs have produced information concerning labelstock purchases from non-defendant manufacturers. As Defendants observed, "[t]here is no principled distinction between providing that information for non-Defendant manufacturers, on the one hand, and for other sellers with which Defendants compete in making sales to Plaintiffs and putative class members on the other." (Reply Br. in Supp. of Mot. to Compel at 15.) Furthermore, our Court of Appeals has recognized that in making a class certification determination in a Sherman Act section 1 setting, the entire structure of the industry must be considered, including such matters as Defendants' market power, the fungible nature of the products, the elasticity of demand, and the availability of substitute products. *See In re Linerboard Antitrust Litigat.,* 305 F.3d 145, 153 (3d Cir.2002). The pricing of non-manufacturer sellers and the use of non-manufacturer sellers' prices by class members may bear on the questions of class-wide impact of the alleged conspiracy and on the matter of whether questions of law or fact common to the class members predominate over such questions affecting only individual members. Accordingly, Plaintiffs will be required to produce the requested information pertaining to purchases of labelstock from non-manufacturers.

## B. Plaintiffs' Financial Records

■ Request # 2 of Defendants' First Set of Requests for Production of Documents sought:

> Copies of all of your actual or budgeted financial statements, including but not limited to, balance sheets, income statements, statements of sources and uses of funds, cash flow statements, statements or reports of budget variances and annual reports, during the relevant period on whatever temporal basis created (for example, without limitation, monthly, quarterly, annually, etc.).

In their Reply Brief, Defendants suggested that a more limited production may suffice, stating that "Defendants are most interested in what Plaintiffs' financial records would reveal about each Plaintiff's total sales (and thus relative size), about the proportion of the Plaintiffs' total sales for which labelstock purchases and labelstock product sales account, and about the proportion of labelstock cost to the cost of the product(s) that the Plaintiff sells." (Reply Br. in Supp. of Mot. to Compel at 18–19.) At oral argument, defense counsel suggested that such information may enable a differentiation among Plaintiffs, with some being ordinary buyers and others being "power buyers." (Tr. at 70.) Defendants asserted that "power buyers" would have greater leverage in negotiating a price for labelstock, distinguishing them from other class members.

A similar argument was rejected by Chief Judge Thomas Hogan in *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000), who explained:

> [D]efendants contend that this data is necessary to show plaintiffs' demand elasticity which defendants say is necessary to show their leverage vis-a-vis particular plaintiffs and therefore would assist them in determining the prices that they would have been able to charge each plaintiff in the absence of the conspiracy .... [D]efendant's 'price discrimination' argument is essentially equivalent to the 'countervailing power' argument rejected in *Folding Carton*:
>
> > We do not find defendants' 'countervailing power' argument persuasive. The

defense that plaintiffs' economic power could have kept the prices of folding cartons down is irrelevant where, as here, the crucial issue is whether there was a conspiracy to fix prices. To suggest that a conspiracy was not as successful as it might otherwise have been because of the plaintiffs' countervailing economic power is absurd. Such an alleged 'economic check' is of no consequence in a price fixing case. Whether certain buyers made profits is irrelevant to the question of whether those buyers actually paid higher prices as a result of the alleged conspiracy to fix prices. Moreover, buyers' leverage is not determined by profits, but by volume of purchases. *Id.* at *3–4.

> ... Finally, the court agrees with plaintiffs that if defendants are able to price discriminate in the absence of the conspiracy, as they now allege, they must already have in their possession the information necessary to measure individualized demand elasticities if such information is vital to these alleged price discrimination practices.

I find this reasoning persuasive. The status of a class member as a "power buyer" does not affect the common question of whether there existed a conspiracy to fix prices. In any event, there are more direct means of determining whether a particular class representative is a "power buyer"— evidence of the volume of labelstock purchased. Plaintiffs must produce information on all labelstock purchases, from both manufacturers and non-manufacturers. Accordingly, there is no need to require the production of the detailed financial information for purposes of ascertaining the existence of "power buyers." *See In re McDonnell Douglas Corp. Securities Litig.*, 92 F.R.D. 761, 762 (E.D.Mo.1981) (denying discovery of plaintiffs' tax returns where there were more direct means of discovering plaintiffs' damages).

Defendants have not articulated any other rationale for seeking production of financial

statements and other information.[1] Accordingly, Plaintiffs will not be required to produce the documents sought by Request # 2 of Defendants' First Set of Requests for Production of Documents.

## C. "Downstream" Sales Information

[3] As described by Plaintiffs, Defendants seek "downstream" data regarding:

- Each labelstock product manufactured and sold by Plaintiffs;
- The identity of each of Plaintiffs' customers for labelstock products;
- The business of each of Plaintiffs' customers for labelstock products;
- The prices Plaintiffs charged each of their customers for labelstock products;
- The procedures, methods and processes used by Plaintiffs to determine the prices they charged [or] quoted to each of their customers for labelstock products;
- The non-price terms and conditions of sale offered by Plaintiffs to each of their labelstock customers; and
- The identity of Plaintiffs' present and former employees having responsibility for pricing, customer service and competitive activity reports with respect to Plaintiffs' sales of labelstock products to their customers.

(Br. in Opp. to Mot. to Compel at 12–13.)

In general, a price fixing conspiracy claim may not be defended on the ground that the purchaser passed on the higher cost of the product to its customers. *See generally, Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968). Consequently, courts generally disallow discovery of downstream sales data in cases such as this one. *See, e.g., In re Polyester Staple Antitrust Litig.*, MDL Docket No. 3:03–CV–1516, slip op. at 5–6 (W.D.N.C. Feb. 5, 2004); *In re Folding Carton Antitrust Litig.*, MDL No. 250, 1978 U.S. Dist. LEXIS 20409, at *9 (N.D.Ill. May 5, 1978) ("Whether purchases absorbed, passed-on, or made a profit on the overcharges in comparison with the industry generally is irrelevant, and investigations into such matters are proscribed ....").

Defendants argue that, notwithstanding the general rule, downstream data discovery is appropriate in this case to determine whether a conflict of interest exists among the named and unnamed members of the class. Defendants also contend that such discovery should be allowed to determine whether one of the recognized exceptions to the bar on the pass-on defense may apply here. Neither argument is persuasive.

In support of the contention that downstream data is relevant to the possible existence of a conflict of interest among named and non-named class members, Defendants rely upon *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181 (11th Cir. 2003). In that case, the Court of Appeals did remand the matter to the district court with directions that it allow downstream discovery. *Id.* at 1192. At issue in *Valley Drug* was an alleged conspiracy to keep generic versions of a drug off the market, thereby causing an increase in the price of the brand product. The putative class included three national wholesalers, and they accounted for more than 50 percent of the plaintiffs' total claims. Significantly, the defendants in that case "presented evidence that the cognizable antitrust injury suffered by the national wholesalers may have been outweighed by the economic benefits these parties experienced in the absence of generic competition." *Id.* at 1193. In other words, defendants had produced evidence that the national wholesalers may have profited to a greater extent in the absence of competition from generic producers. The court concluded that a showing had been made of a substantial probability of antagonistic interests between class members who had benefitted from the absence of generic product competition, and those who had been harmed by it. *Id.* at 1195. This showing was sufficient to permit downstream discovery.

---

1. It should be noted that courts have declined to require production of financial statements for purposes of determining whether the named class representatives can adequately represent the interests of the putative class. *See, e.g., Sanderson v. Winner*, 507 F.2d 477, 478–79 (10th Cir.1974); *In re Wirebound Boxes Antitrust Litig.*, 131 F.R.D. 578 (D.Minn.1990); *In re Alcoholic Beverages Litig.*, 95 F.R.D. 321, 326 (E.D.N.Y. 1982); *Bogosian v. Gulf Oil Corp.*, 337 F.Supp. 1228, 1230 (E.D.Pa.1971).

■ In this case, by way of contrast, Defendants have not made an initial showing of the potential for a fundamental conflict of interest among class members. *Valley Drug* did not suggest that downstream discovery is appropriate in every case. As noted above, courts generally proscribe downstream discovery. In the absence of some showing of conditions making it probable that some large subset of the class benefitted from the price fixing conspiracy, making their interests antagonistic to other class members, downstream discovery should not be allowed. In this regard, it is important to note that the Supreme Court has cautioned that the effectiveness of antitrust actions may be substantially reduced if defendants are allowed to pursue an inquiry into downstream activities and the massive discovery that such an inquiry would entail. *Hanover Shoe*, 392 U.S. at 494, 88 S.Ct. 2224. Furthermore, the marginal relevance of the information sought is clearly outweighed by the burden and expense that the proposed discovery would impose.[2]

■ Defendants also argue that they should be able to pursue downstream discovery in order to determine whether any plaintiffs had "cost-plus" contracts or whether any plaintiff was controlled by a customer of its labelstock product. In *Illinois Brick*, 431 U.S. at 736, 97 S.Ct. 2061, the Court recognized exceptions to the pass-on bar for fixed-quantity, cost-plus contracts and when the direct purchaser is owned or controlled by its customer. Defendants have inquired directly on these questions, but are not content with the negative responses they have received. They claim that they should be able to inquire whether there exists the functional equivalent of a fixed-quantity, cost-plus contract. The Third Circuit has not endorsed the "functional equivalent" approach advanced by Defendants. *See, e.g., McCarthy v. Recordex Service, Inc.*, 80 F.3d 842, 849 (3d Cir.1996); *Mid–West Paper Products Co.*

*v. Continental Group, Inc.*, 596 F.2d 573, 578 (3d Cir.1979). Furthermore, the single instance cited by Defendants as suggesting that a class member's purchase of labelstock may be controlled by its customer does not justify the far-reaching downstream discovery of all named plaintiffs that Defendants desire to pursue. Accordingly, Plaintiffs will not be required to produce the requested downstream sales data. *See In re Vitamins*, 198 F.R.D. at 302.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion to Compel Plaintiffs to Respond to Defendants' Class Certification Discovery Requests (Dkt. Entry 112) is **GRANTED IN PART.**

2. Within twenty (20) days from the date of this Order, Plaintiffs shall supply the requested information pertaining to its purchases of self-adhesive labelstock from non-manufacturers.

3. In all other respects, Defendants' Motion to Compel is **DENIED.**

---

2. Defendants have identified one of the plaintiffs, Glenroy, Inc., as also a manufacturer of film-based labelstock, selling to customers in common with Defendants, and has identified another plaintiff, Bertek Systems, Inc., as purchasing labelstock from a customer in common with Defendants. Defendants may be able to engage in discovery as to those two plaintiffs for purposes of determining whether either plaintiff should not be regarded as an adequate class representative. Those two instances, however, do not justify the wide-ranging discovery that Defendants would like to pursue.